Glenna M. Smith, Plaintiff-Appellee, v. Dorothy Moran, Defendant, Badger Mutual Insurance Company, Respondent-Appellant.

Gen. No. 64-96.

Second District.

July 13, 1965.

Diver, Diver, Ridge and Brydges, of Waukegan (Thomas W. Diver and Louis W. Brydges, of counsel), for appellant.

Lidschin and Pucin, and Kaufman, Strouse, Wasneski and Yastrow, all of Waukegan (Max Lidschin and Shelby Yastrow, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This case involves the interpretation of a homeowner's insurance policy issued by the appellant, Badger Mutual Insurance Company, to the defendant, Dorothy Moran. The plaintiff, Glenna M. Smith, had obtained a $15,000 judgment against the assured, Dorothy Moran, and then brought a Citation to Discover Assets action against the insurance company. The result of the citation proceeding was an order on the insurance company to pay Glenna Smith $15,000, and this is an appeal by the company from that order.

A brief resume of the original case between Smith and Moran will be helpful to an understanding of the present litigation. The plaintiff filed a two count complaint against the defendant for damages sustained as a result of an assault. The first count stated that the defendant "with force and arms, assaulted the plaintiff, and shot off a certain gun, . . . at and against the plaintiff, . . ." The second count stated that the defendant "recklessly, willfully, wantonly and maliciously discharged a certain gun . . . with a deliberate intent to inflict injury, or with an intentional disregard for the safety of the plaintiff. . . ."

The evidence adduced at trial showed that the plaintiff was a waitress in McCormick's Tavern and Restaurant. The plaintiff and defendant were not acquainted with each other. The defendant came into the restaurant and was overheard by the plaintiff to ask another waitress, Dolores Nelson, if she could speak to her. Mrs. Nelson answered that she was too busy and the defendant replied "you had better talk to me now." Plaintiff was standing just to the rear of Mrs. Nelson at the time. Plaintiff then heard a shot, followed by Mrs. Nelson saying "Oh My God." This was followed by another shot, at which time plaintiff felt a terrible

158

pain in her left leg. She looked "and saw the defendant with a gun shooting at Mrs. Nelson." ..

The jury returned a verdict in favor of the plaintiff in the sum of $15,000, and gave an affirmative answer to the following special interrogatory: "Was the defendant, Dorothy Moran, at the time and place in question guilty of wilful, wanton and malicious *conduct* and was malice the gist of the action?" The trial court entered judgment on the verdict and an appeal followed. This Court affirmed the judgment. Smith v. Moran 43 Ill App2d 373, 193 NE2d 466.

Thereafter, the plaintiff brought this ancillary action in accordance with Ill Rev Stats c 110, § 101.24 (1963). At the hearing on the citation, it was found that the company was obligated under sec II, par 1 of its policy of insurance to pay on behalf of the defendant ". . . all sums which the Insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person. . . ." There was an exclusion in the policy which provided that "Section II of this policy does not apply: . . . (c) to injury . . . caused intentionally by or at the direction of the Insured." The trial court ruled in effect that this exclusionary provision did not apply to the facts of this case.

It is the contention of the appellant that the act of the defendant was intentional and, therefore, excluded from coverage under its policy. To buttress its position, the appellant refers to the jury's affirmative answer to the interrogatory, and the following language of this Court in the original appeal (43 Ill App2d at p 377):

> "We think the evidence here shows that the shooting was a wrongful act, intentionally done and that there is no evidence remotely suggesting

159

that the shooting was accidental, justified or with just cause or provocation."

Appellant further relies on what it says is the plain, ordinary and generally understood meaning of the exclusionary paragraph in question.

The plaintiff contends that even though the act of Dorothy Moran was intentional, still, the resulting injury to plaintiff was not intentional, and consequently, the exclusionary clause does not apply. Therefore, the sole task for this Court is to interpret the exclusionary clause as applied to the facts in the original suit.

The appellant cites Hill v. Standard Mut. Cas. Co. 110 F2d 1001, as authority for its contention. However, the exclusionary clause in that case stated that the insurance company would not be liable for damage caused by intentional *acts* of the assured. The case before us relates to *injury* caused intentionally by or at the direction of the insured. The balance of the cases cited by appellant concern factual situations different from that presented here. They are cases wherein the insured sought recovery based upon injuries sustained by the intended victim, as, for example, if Dolores Nelson, the intended target, were seeking recovery in the case before us.

Although this precise question has not been passed upon by a court of review in this State, still, we have a somewhat analogous situation in the case of Taylor v. John Hancock Mut. Life Ins. Co. 11 Ill2d 227, 142 NE2d 5. This was an action brought upon a life insurance policy providing for death benefits where death occurs "as a result of bodily injury sustained solely through external, violent and accidental means, directly and independently of all other causes." Briefly stated, the facts were that the decedent, Frank Owen, along with Logan Brooks and John Owen, agreed to burn the house owned by John Owen for the purpose

of collecting fire insurance. After they poured ten gallons of gasoline about the inside of the home in preparation for their arsonous act, an unexpected explosion occurred which trapped Frank Owen in the home and resulted in his death. The beneficiary under Frank Owen's life insurance policy brought an action to recover on the policy and the trial court denied recovery. On appeal, the appellate court reversed the trial court (9 Ill App2d 330) which reversal was affirmed by the Supreme Court, Taylor v. John Hancock Mut. Life Ins. Co., supra, which stated at p 230;

"The coverage question, pertaining to whether the insured's death occurred solely through 'accidental means . . . independently of all other causes,' is discussed at length in the Appellate Court opinion, the conclusions of which we adopt. In Illinois, the courts have adopted a liberal attitude in their interpretation of this common insurance provision. In effect, 'accidental means' has been held to be synonymous with 'accidental result,' and defined as something which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen. (See, e. g., Yates v. Bankers Life and Casualty Co. 415 Ill 16; Rodgers v. Reserve Life Ins. Co. 8 Ill App2d 551.) While it is true the parties intended to burn the house, they obviously did not intend the fire to start when it did. To this extent it was 'accidental' as the term has heretofore been interpreted.

"But even though there is coverage under the terms of the policy, the defendant still insists that it would be against public policy to permit a recovery. This is predicated on the fact that the insured was engaged at the time in an unlawful act.

161

"In considering this issue it must be borne in mind that there is no evidence that the policy was procured in contemplation of the crime or that the beneficiary was guilty of any wrongdoing."

A more recent case, from a sister state, passing upon an insurance policy with provisions identical to those in the case at bar, is reported in Baldinger v. Consolidated Mutual Insurance Co. 222 NYS2d 736, affd 11 NY2d 1026, 183 NE2d 908. In that case, one Allan Banks, an infant of six years of age, was named a defendant in an action for assault and battery by an infant plaintiff, Barbara Jane Baldinger. The plaintiff alleged that, "Allan Banks 'intended to force the infant plaintiff to leave the place where she was standing, and did in fact intend an offensive contact for the purpose of forcing her to leave said place,' but that Allan Banks 'did not intend to cause injury to the infant plaintiff.' However, the infant plaintiff did sustain among other injuries, a fractured elbow." The Supreme Court, Appellate Division, affirmed the trial court's order allowing recovery and stated at p 738;

"(a) that the injury for which the plaintiffs recovered judgment against Allan Banks was not caused intentionally but was rather the unintended result of an intentional act; and (b) that in accordance with the provisions of its policy the defendant was required to indemnify its insured against loss occasioned by such injury. If those provisions do not clearly require such indemnity, the most that can be said in defendant's behalf is that they are ambiguous, since they do not clearly express an intention to exclude liability for unintentional injury resulting from a deliberate act of the insured. If the provisions of the policy are ambiguous, any ambiguity must be resolved against defendant. (Citations omitted)."

162

It will be noted that the Baldinger case and the case before us both arise out of intentional acts. Further to be noted is the fact that in the Baldinger case, it was the insured who sued the insurance carrier.

Both the appellant and the plaintiff in the case at bar agree that the act of Dorothy Moran was intentional. It was so held by this Court on the original appeal. Nevertheless, there is a distinction between an intentional act and an intentionally caused injury.

We are of the opinion that the injury to the plaintiff was not intentionally caused by the defendant, but was an unintentional result of an intended act directed at Dolores Nelson. Having arrived at this conclusion, we, therefore, hold that the trial court was correct in its judgment and that judgment is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.