John W. KRAUS, Jr., Administrator of the Estate of Linda E. Kraus, Deceased, Appellant,

v.

ALLSTATE INSURANCE COMPANY, a Corporation.

No. 16292.

United States Court of Appeals Third Circuit.

Argued March 10, 1967.

Decided June 28, 1967.

Harry N. Sydor, Bagley & Sydor, Pittsburgh, Pa., for appellant.

John A. Robb, Royston, Robb, Leonard, Edgecombe, Miller & Shorall, Pittsburgh, Pa., for appellee.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

GERALD McLAUGHLIN, Circuit Judge.

On July 25, 1957, Arthur H. Depew, now deceased, was the insured under an automobile liability insurance policy issued by appellee, Allstate Insurance Company, an Illinois corporation. The coverage was in the amount of up to $5,000 for bodily injury sustained by one person and up to $10,000 when more than one person was injured. The policy provided, inter alia:

"Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of:

A. bodily injury sustained by any person, and arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile.

Section I—Part 1. Exclusions— what this Part of the policy does not cover. (Page 3)

*This Part 1 does not apply to:*

6. *bodily injury or property damage caused intentionally by, or at the direction of, the insured;* or
\* \* \*" (Emphasis supplied.)

Admittedly, on July 25, 1957 Depew was estranged from his wife. On that date he was employed by Dravo Corporation in one of its blasting crews. He had stolen some dynamite from Dravo which he placed in his automobile. That night he met his wife by appointment on East Ohio Street, a public thoroughfare in Pittsburgh, Pennsylvania. While they were both in the automobile of Depew, the latter detonated the dynamite. As a result the automobile was totally destroyed. Depew and his wife were killed. Linda Kraus a pedestrian, plaintiff's decedent, was also killed and several other pedestrians injured. The Kraus administrator and the other people hurt sued the Arthur Depew estate in the Commonwealth Court for the death and said injuries. Appellant Allstate Insurance

Company withdrew its appearance for the Depew estate and did not defend the Depew administrator. The case was tried to the Court and there were verdicts and judgments in favor of the Kraus administrator for $12,000; for John W. Kraus, et al $5,000; for Frank Panza and wife $3,000. After the entry of the judgments the Depew estate assigned all its rights in its policy claim against Allstate to Kraus as administrator of the Linda Kraus estate. Kraus brought this suit in the District Court on the assigned Depew policy cause of action. The complaint, inter alia, alleged that Allstate had wrongfully refused to defend the state court litigation and that a settlement of all causes could have been obtained within the policy limits. The complaint averred bad faith and breach of contract on the part of the insurance company, asserting that this brought about the judgment in excess of the policy limits.

The answer set up ten defenses, all of them deriving from the central contention that under the conceded facts there was no policy coverage arising out of the explosion.

Allstate moved for summary judgment primarily on the ground:

"2. The assignor has no cause of action against this defendant in that:

(a) the assignor's liability did not arise from the operation, maintenance, or use of an automobile, and was not, therefore, within the coverage of the defendant's policy of insurance, and

(b) the defendant did not assume to insure against liability created by the insured-assignor's intentional conduct, and excluded the same in its contract of insurance."

The District Court upheld the motion, concluding that under the stipulated facts the exclusionary clause above quoted " * * * exempts the insurer from liability for bodily injury caused by the intentional act of the named assured."

Argument on behalf of appellant is well presented. It is stressed that the insured's purpose was to kill his wife and himself; that the death and injuries suffered by the pedestrians on the street were not caused intentionally and did not come within the exclusory policy language. It also asserts that said claims arose out of the ownership or use of the insured's automobile. This is summed up by saying "The Plaintiff contends that it cannot be denied that but for Arthur Depew's ownership, maintenance and use of his automobile, the Plaintiff's decedent would [not] have been killed on July 25, 1957."

Examining appellant's first proposition i. e. Depew did not intend to harm passersby we find that the record fails to support this theory. It is specifically agreed that Depew meant to kill his wife and himself. There is nothing in the stipulation from which reasonable inference could be had that the probability of collaterally killing and injuring innocent people on the public street was not within his contemplation. Actually the trial evidence points solely the other way. Depew was a professional dynamiter. Appellant's brief thus pinpoints him in a statement concerning his employer saying " * * * the Dravo Corporation, *who employed Depew in one of their blasting crews,* settled the claim against it * * *." (Emphasis supplied.) The dynamite which Depew used was stolen by him from Dravo. He knew or should have known that there might be human beings in the immediate vicinity. He saw or would have seen if he had looked, the very people who were killed or hurt by the explosion. Either way his act with relation to the pedestrians must be construed as intentional. Depew was familiar with the quantity of dynamite he was using and its destructive range. It is fairly inferable that the persons he observed or should have observed were within that range for concededly they were injured by the blast. In that setting, he deliberately exploded the dynamite and so brought about the death of Linda Kraus and harm to the others. We hold that those casualties were ex-

pressly within the exclusions to the Part 1 coverage of the policy.

Appellant's second argument is that Depew's use of the automobile as a meeting place in connection with the explosion brought the use directly within Section I—Part 1 of the policy whereby Allstate agreed to "pay for an insured all damages which the assured shall be legally obligated to pay because of: A. bodily injury sustained by any person * * * arising out of the ownership, maintenance or use, * * * of the owned automobile * * *."

■■ We agree of course that the insurance contract, drawn by the Company, in the event of ambiguity, should be more strictly construed against the latter. However, there is no question of policy ambiguity here. The murder of Mrs. Depew did not arise within the policy "use" of the Depew automobile. It had no relationship to the function of the car qua car. There is nothing in the policy evincing any thought of assuming liability for death and injury resulting from an intentional setting off of a dynamite explosion for the purpose of killing the wife of the insured. This was not an incident in the use of that automobile. The latter was not a causative factor. It was merely the place where Depew murdered Mrs. Depew by exploding a charge of dynamite. The automobile had no more connection with that than it would have had if Depew had shot her. If that had happened and some of the shots had gone astray, killing Linda Kraus and wounding the other pedestrians, the absence of a policy use of the car would be immediately apparent. It is that identical absence of policy use which is relied upon by appellant for collection of damages under the Depew Allstate policy.

The decisions presented by appellant are of no assistance on the problem before us. It is seemingly undisputed, as it should be, that Pennsylvania law governs. In a recently basically similar suit, with much the same general policy terms, the Pennsylvania Superior Court held:

"In the instant case, we are confronted with a liability arising directly from a wilful, intentional, and criminal assault by an insured, for which a judgment was rendered against the perpetrator alone. * * * *We hold that all liability arising therefrom, * * * is excluded from coverage under the insurance policy before us.*" Esmond v. Liscio et al., 209 Pa.Super. 200, 211, 224 A.2d 793, 799 (1966). (Emphasis supplied.)

Farm Bureau, etc., Insurance Co. v. Hammer, 177 F.2d 793, 795 (4 Cir. 1949) involved a liability automobile insurance policy which had the standard exclusion from coverage of intentional injuries by the assured. The latter was convicted of intentionally causing a collision between his automobile truck and an automobile in which five people were riding. All of the five were killed or injured in said collision. Judge Soper for the Court held in his opinion:

"There can be no doubt that the policy in suit could not legally cover and was not intended to cover such conduct as Wagner was guilty of, or to indemnify him for the consequences of his crime. Not only is it contrary to public policy to permit an insured to profit by his own wrongdoing or to encourage the commission of unlawful acts by relieving the wrongdoer of financial responsibility therefor, but the policy issued to Wagner specifically excludes from its coverage the unlawful act which he performed."

We have found no decision nor has any been brought to our attention which permits a recovery founded on the type of facts in this appeal.

The judgment of the District Court will be affirmed.