ERNESTINE MARCANO, Plaintiff-Appellant, *v.* THE CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

(No. 58735; ▮▮▮▮▮)

First District (5th Division)—September 13, 1974.

James J. Reidy and Richard H. Lucy, both of Chicago (William J. Harte and Kevin M. Forde, of counsel), for appellant.

Francis J. Mullen and John J. Devine, of Chicago Transit Authority, and John J. O'Toole, all of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from the entry of judgment in favor of defendants Joseph Harrell and the Chicago Transit Authority (C.T.A.) and the denial of her post-trial motion to vacate the judgment and enter judgment for plaintiff or, in the alternative, to grant plaintiff a new trial. Her action seeks to recover damages for personal injuries sustained when she alighted from a C.T.A. bus driven by Harrell. On appeal she contends: (1) the judgment is contrary to the overwhelming weight of the evidence or, alternatively, is against the manifest weight of the evidence; and (2) the trial court's failure to require defendants to produce a signed statement of a witness became prejudicial error when defendants were permitted to use that statement in cross-examination of the witness and were allowed to introduce the statement into evidence.

The following evidence was adduced at trial.

*Ernestine Marcano testified on her own behalf.*

She was a passenger on a bus owned by defendant C.T.A. and operated by defendant Harrell on April 2, 1967. There were approximately 10 to 12 other passengers. She pulled the cord buzzer indicating to Harrell that she wished to get off the bus at 70th Street and Wentworth Avenue. The

bus stopped at the corner, a few feet before 70th Street and not too close to the west side of Wentworth Avenue. She exited from the front door. She was stepping down the steps holding the railing and had just placed her right foot onto the street when the doors closed trapping her left arm and leg. She screamed and as the bus pulled away, hopped alongside the bus until her body came free of the door and she fell into the street underneath the bus. The bus stopped and some people appeared who carried her into a nearby church. A police squadrol took her to the emergency room at St. Bernard Hospital where her left arm was placed in a plaster cast. Due to difficulties in the healing of this arm, she was not discharged from medical treatment at the hospital until June 30, 1967.

On cross-examination plaintiff testified that she did not remember speaking to the bus driver after the accident. Only one witness, Mr. Canada, gave her his name the day she was hurt. He also visited her at home when she was released from the hospital and they discussed the accident. She does not know anyone named Richardson.

*David E. Canada, Jr., for the plaintiff.*

On the date in question he was standing almost at the bus stop on the corner of 70th Street and Wentworth Avenue talking to Trucksy Richardson when a C.T.A. bus came to a halt and plaintiff alighted from the front door. No other passengers exited at the stop. She had one foot on the ground when the bus closed its doors on her arm and started into traffic. He did not recall which arm was caught in the door. She attempted to move along with the bus before falling. The right front wheel ran over part of her left arm. She was dragged approximately 10 feet before he could come to her aid. When he reached her, she was lying on the street between the front and rear door with her head and left arm underneath the bus. The witness and another person assisted plaintiff into a nearby church while Richardson held the church door open. Two Chicago police officers arrived to take plaintiff to the hospital. He did not give them his name although he did tell one officer that he had witnessed the accident. He followed the squadrol to the hospital in his car and gave plaintiff's daughter his name. He did not know plaintiff prior to this accident.

On cross-examination, Canada admitted to having been convicted of numerous felonies. He also admitted to having discussed the accident when he visited plaintiff at her home 2½ to 3 years after the accident and to having seen her on the street on two other occasions.

*Trucksy Richardson for plaintiff.*

On the date in question he was standing outside the Kindreck Memorial Baptist Church at 70th Street and Wentworth Avenue with David Canada and Alton Harvey. A C.T.A. bus came to a stop in front of the

church. Plaintiff was stepping out the front door of the bus when the door closed on her foot. He does not remember which foot was trapped. The bus headed south dragging plaintiff along the street with it for a few feet before halting again. He turned and walked into the church going downstairs into the basement. He did not talk to anyone that day regarding the accident. He had never met plaintiff prior to this accident.

On cross-examination he admitted that the first time he mentioned that he had witnessed the accident was 2 months prior to this trial when he talked to plaintiff's attorney.

*Alton Harvey for plaintiff.*

On the day in question he was standing with Canada and Richardson when a C.T.A. bus came to a stop approximately 15 feet from the entrance of the church. Plaintiff was getting off the bus using the front entrance located behind the right front wheel. She was holding onto the guard rail with her left hand, and had her right foot on the ground with her left foot on the bottom step when the door closed on her left arm. He ran to the bus and started pounding on the rear door as the bus moved down the street dragging plaintiff about 15 feet before stopping. He went over to where she was lying between the front and rear doors of the bus and picked her up off the ground. He further testified that plaintiff told the bus driver, in response to his question, that he closed the door on her arm. The witness helped plaintiff into the church where they waited until two police officers arrived to take her to the hospital. He accompanied her in the squadrol. Neither the police nor the bus driver asked him if he had witnessed the accident. He did not know plaintiff prior to this accident.

On cross-examination he admitted telling a C.T.A. investigator the Saturday previous to the trial that the bus driver was courteous, but did not ask plaintiff what had happened. He denied telling the investigator that he did not remember the two other men who were standing outside the church with him at the time of the accident.

*William McNabola for plaintiff.*

On April 2, 1967, he was the medical doctor in the emergency room at St. Bernard's Hospital when plaintiff arrived. She told him that she was caught in the door of a C.T.A. bus and dragged.

*Melvin Clausen for defendant.*

He is a C.T.A. investigator. He took a statement from Alton Harvey on the Saturday prior to trial. Harvey stated to him at that time "There were two other men standing by me when this [accident] happened, but now I can't remember their names." The statement was received into evidence.

*Joseph Harrell, testified on his own behalf.*

On the date in question he was operating a C.T.A. bus. At approxi-

mately 2 P.M. he pulled to within 10 to 12 inches from the curb and just behind the crosswalk at the northwest corner of 70th Street and Wentworth Avenue to allow plaintiff to alight. The traffic was light and the street was clean and dry. He directed his full attention to plaintiff until she had stepped down the front steps and cleared the front doors by three or four feet. He did not see her trip and she did not appear to be in a hurry. He closed the doors and proceeded to accelerate the bus in a southerly direction until he heard a scream and received an indication that something had happened outside the bus. He stopped the bus about 3 feet south of where plaintiff had alighted and stepped out of the bus. "She indicated that I did something." She told him that she had tripped on the heel of her shoe. He handed out witness cards to people on the bus, but does not remember passing out any cards to anyone else. No one outside the bus wanted to get involved as a witness.

*James B. Ryan for defendant.*

He is a Chicago police officer. On the date in question he and another police officer responded to an accident at a store front church in the vicinity of 70th Street and Wentworth Avenue. In response to his question, plaintiff stated that she had tripped stepping down off the bus. She did not state that her arm had been caught in the doors of the bus, or that she had been dragged down the street by the bus or that she had fallen underneath its wheels. He asked for witnesses to the accident, but no one came forward. The bus driver however stated that plaintiff tripped stepping down off the bus. Two or three men accompanied plaintiff to the hospital, but he did not ask their names.

OPINION

Plaintiff contends that the judgment is against the manifest weight of the evidence. It is argued that her testimony corroborated by three impartial eyewitnesses requires this court at the very minimum to grant her a new trial.

■■ In close cases where findings of fact must necessarily be dictated to a large extent by impressions of credibility received by the trial judge from his observation of the witnesses, it is particularly true that an appellate court may not disturb the findings of the trial court unless they are manifestly against the weight of the evidence. (*Hunter v. DeMay,* 124 Ill.App.2d 429, 259 N.E.2d 291.) In order that the judgment be against the manifest weight of the evidence, it must appear that conclusions opposite to that reached are clearly evident. (See *Bouillon v. Harry Gill Co.,* 15 Ill.App.3d 45, 301 N.E.2d 627.) Moreover, where the conclusion of the trial court is based upon substantial evidence, it may not be disregarded merely because the reviewing court might disagree with it or, as triers of fact, have reached a different conclusion based on the conflict-

ing evidence. *Rector v. Robinson,* 36 Ill.App.2d 272, 183 N.E.2d 22.

■■ After reviewing the record we are convinced that the judgment is not against the manifest weight of the evidence and is supported by substantial evidence. Harrell testified that he gave plaintiff his full attention as she descended the front steps of the bus. When she had cleared the doors by 3 to 4 feet, he closed the doors and proceeded onward until he heard a scream. He stopped the bus about three feet south and alighted. Plaintiff at that time told him she had tripped on the heel of her shoe. Police Officer Ryan testified that plaintiff told him that she tripped while stepping off the bus. She did not tell him that her arm had been caught in the doors of the bus. Both Harrell and Ryan further testified that they asked for witnesses, but no one stepped forward. The testimony of these two witnesses contradicts plaintiff and her witnesses who testified that she was caught in the door of the bus, that she did not speak to Harrell and that there were witnesses who indicated that they had observed the accident. Furthermore, the testimony of plaintiff and her three eyewitnesses was marked with lapses in memory and inconsistencies. Each differed on what part of her anatomy was trapped in the door of the bus. Finally, it must be noted that while the number of witnesses favoring plaintiff exceeded those for defendant, it does not establish that the verdict for defendant is erroneous. (*Battershell v. Bowman Dairy Co.,* 37 Ill.App.2d 193, 185 N.E.2d 340.) We conclude that the evidence is merely conflicting and therefore the judgment is not against the manifest weight of the evidence and would certainly not support a judgment for plaintiff.

Plaintiff alternatively contends that the trial court's failure to require defendants to produce a signed statement of Alton Harvey became reversible error when defendants were permitted to use the statement in cross-examination of Harvey and were allowed to introduce the statement into evidence. Harvey was called as a witness on behalf of plaintiff. Prior to placing him on the witness stand, plaintiff's attorney requested a copy of the witness's statement given to the Chicago Transit Authority investigator on the Saturday prior to trial. This motion was denied. The statement was used to cross-examine Harvey and was then introduced into evidence.

■■ In *Monier v. Chamberlain,* 35 Ill.2d 351, 221 N.E.2d 410, the Supreme Court adopted the policy of permitting parties a full disclosure by granting broad discovery orders so as to expedite the ultimate disposition of their claims. In *Carlson v. General Motors Corp.,* 9 Ill.App.3d 606, 619-620, 289 N.E.2d 439, we held that the trial court has broad discretion in imposing sanctions where there is a non-compliance with discovery rules. "Factors to be considered are the surprise of the testimony

to the opposing party * * *, the prejudicial effect of the testimony, the diligence of the opposing party in seeking discovery, timely objection to the testimony and good faith of the party calling the witness * * *."

■■ While timely objection was made by plaintiff's counsel here the circumstances shown by this record do not indicate any surprise or prejudice that would require our granting plaintiff a new trial. It must be recognized that Harvey was plaintiff's eyewitness. The statements that came as a surprise to plaintiff's counsel could have been alleviated by a discovery order prior to trial since counsel had full access to the witness. Moreover, the prejudicial effect of the statements is at best tenuous. The impeachment of Harvey was on collateral matters that concerned whether he could remember the names of the other eyewitnesses and whether the bus driver had, in fact, asked plaintiff what had happened. The record does not show that the trial judge viewed these statements as serious inconsistencies that affected the witness's credibility with respect to having witnessed the accident. We, therefore, are unable to agree that such failure to produce the statement requires our granting plaintiff a new trial.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DRUCKER and BARRETT, JJ., concur.