THE FARMERS AUTOMOBILE INSURANCE ASSOCIATION, Plaintiff-Appellant, v. RALPH MEDINA et al., Defendants-Appellees.

(No. 73-180;

Second District—June 6, 1975.

T. MORAN, J., specially concurring.
SEIDENFELD, J., dissenting.

Eugene E. Brassfield, of Maynard & Brassfield, of Rockford, for appellant.

Schirmer, Schirger, Graff & Beger, of Rockford, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

The plaintiff insurance company filed this declaratory judgment action to determine whether they were required to defend under the provisions of a homeowner's policy issued to Ralph Medina and Mathilda A.

Medina, parents of Robert Sapp, a minor. The trial court found in favor of the defendants and the plaintiff insurance company appeals.

The sole question presented herein is the interpretation of the following exclusionary clause found in the policy:

"This policy does not apply:

1. Under Coverage E—Personal Liability and Coverage F— Medical Payments to Others.

\* \* \*

f. to bodily injury or property damage which is either expected or intended from the standpoint of the insured."

In considering similar exclusionary clauses the courts in this and other states have repeatedly stated the test is whether the injury was not caused intentionally but was, rather, an unintended result of an intentional act.

The minor defendant herein, Robert Sapp, intentionally flipped matches upon a gasoline spot located behind or directly under the rear end of a parked Cadillac. The spot ignited and burned the automobile. At the time of the incident Sapp and three other young people were picking grapes at or near an alley in the vicinity of the automobile. After the fire the four young people gave statements to the police department. The statement of one girl included the following:

"\* \* \* Robert, he seen [sic] the gas leaking from a car that was parked in the alley \* \* \* and he [Robert] told us he was going to throw a match at the gas. We turned around and seen [sic] him threw [sic] it. He ran towards us and we all walked down to the park. He was bragging about it."

The other girl stated in her statement to the police:

"While we were picking grapes Sap [sic] noticed that the car had a gas leak \* \* \* He mentioned it to us. Pam and I got the grapes we wanted and started walking back to the park. We were almost to the park when Sap [sic] came back running and told us how he had threw [sic] a match and it set the car on fire."

The third statement from Brian Moberly contained the following:

"At this time Bob Sapp asked me for some matches and I gave some to him. After I had given them to him he told me that he was going to light the car."

The defendant Sapp's statement to the police contained the following:

"We saw gas just dripping out of a '68 Caddy. I asked Brian Moberly for some matches and he gave them to me \* \* \* I lite [sic] another match and I thought it went out and I threw it and it went straight into the gas."

The four statements were admitted into evidence. At the trial the wit-

ness Moberly admitted that Sapp had made the statement that "he was going to light the car." He further stated that the statement was true. The witness Moberly further testified that the spot which was ignited was partially underneath the vehicle and ran out behind the vehicle. The defendant Sapp testified that the spot in question was about a foot behind the rear bumper of the vehicle and was about the size of a basketball. However, he denied that he noticed the gasoline dripping from the car as he had stated to the police at the time of the incident. In substance he denied that he intended to burn the automobile. He further testified that the spot might have been oil but that "I didn't really care what it was." He further testified that if he had known it was gasoline he wouldn't have flipped matches at it and stated, "Oil will burn at 500°."

The trial court, in substance, found that the intentional act of the minor defendant caused an unintended result. The court stated in its decision:

> "There is another question of fact, and that is whether the boy when he flipped the matches obviously intended to light something. You don't flip a match unless you intend to do something, particularly when you are flipping matches at a particular spot that looks like it might result in the presence of a flame. So that I believe he flipped the matches in the oil spot intending to light the oil. However, I do not believe that when he flipped the matches in the oil spot he intended to burn up the Cadillac."

In examining the various court decisions both in this State and from other jurisdictions we find that the courts have considered this exclusionary clause, and a most comparable one, which reads as follows:

> "To injury * * * caused intentionally by or at the direction of the insured."

It is to be noted that the exclusionary clause in the case before us contains the expression or word "expected." The term "expected" has been judicially construed to mean a high degree of certainty. (*Aetna Casualty & Surety Co. v. Martin Bros. Container & Timber Products Corp.* (D.C. Ore. 1966), 256 F.Supp. 145.) In several cases which have considered exclusionary clauses containing the term "expected" in addition to the term "intended" the courts have failed to find that the addition of the term "expected" affected the outcome of the case. (See *Vanguard Insurance Co. v. Cantrell* (1972), 18 Ariz.App. 486, 503 P.2d 962; *Lyons v. Hartford Insurance Group* (1973), 125 N.J.Super. 239, 310 A.2d 485; *Walker v. Champion* (La. App. 1973), 274 So.2d 840. *Cf. City of Burns v. Northwestern Mutual Insurance Co.* (Ore. 1967), 434 P.2d 465.) It is possible to envision situations in which the inclusion of the term

"expected" in an insurance exclusionary clause could alter the outcome of a suit which required interpretation of the clause; however, in view of the result we reach herein, we find that further discussion of the distinctions between the terms "intended" and "expected" is unnecessary.

As far as we are able to determine, the only case in Illinois involving the construction of a similar exclusionary clause which, incidentally, did not contain the word "expected" is found in *Smith v. Moran* (1965), 61 Ill.App.2d 157, 209 N.E.2d 18, an opinion of this court. In that case we held that "the injury to the plaintiff was not intentially caused by the defendant, but was an unintentional result of an intended act * * *." (61 Ill.App.2d 157, 163, 209 N.E.2d 18, 21.)

A compendium of cases interpreting this type of exclusionary clause is found in 2 A.L.A.3d 1238. No useful purpose would be served in discussing all of the cases found therein, but attention is directed to three specific cases which are cited therein. One of the first cases, and most oft cited, is that of *Baldinger v. Consolidated Mutual Insurance Co.* (1961), 15 App. Div. 2d 526, 222 N.Y.S.2d 736, *aff'd* (1962), 11 N.Y.2d 1026, 183 N.E.2d 908. The court there considered an exclusionary clause reading as follows:

> "To injury * * * caused intentionally by or at the direction of the insured."

The court stated:

> "The rule is well settled that the language used in an insurance contract must be given its ordinary meaning—the meaning which the average policyholder of ordinary intelligence, as well as the insurer, would attach to it. If an exclusion of liability is intended which is not apparent from the language employed, it is the insurer's responsibility to make such intention clearly known. [Citations]." 15 App. Div. 526, 526, 222 N.Y.S.2d 736, 738.

In *Eisenman v. Hornberger* (1970), 438 Pa. 46, 264 A.2d 673, the court considered a case involving an exclusionary clause where the defendants, one of whom was the insured, while in the act of burglarizing a house, used matches to illuminate their way so that they would not have to turn on the lights. One of the matches was dropped into an overstuffed chair and a fire occurred which destroyed the house and furnishings. The court, in holding that the exclusionary clause did not apply and that the insurance company was obligated to defend, stated:

> "As noted before, while there are no Pennsylvania cases dealing with such an exclusionary clause in a homeowner's policy, the vast majority of courts which have considered such a provision have reached the conclusion that before the insurer may validly disclaim liability, it must be shown that the insured intended by

his act to produce the damage which did in fact occur. Annot. 2 A.L.R.3d 1238 (1965)." 438 Pa. 46, 49, 264 A.2d 673, 674.

In a New Jersey case, *Lyons v. Hartford Insurance Group* (1973), 125 N.J.Super. 239, 310 A.2d 485, the court considered an exclusionary clause which read substantially as the one before us, to-wit: "which is either expected or intended." The court considered cases from numerous jurisdictions involving this issue and stated that:

> "The general rule is that coverage exists under insuring and exclusion clauses identical or similar to the ones involved here for the unintended results of an intentional act, but not for damages assessed because of an injury which was intended to be inflicted." 125 N.J. Super. 239, 245, 310 A.2d 485, 488.

In summation, the courts uniformly hold coverage under an exclusionary clause identical to or similar to the one before us is afforded where the injury was the unintended result of an intentional act.

The question thus presented herein is whether the minor defendant intended to burn the automobile in question when he ignited the gasoline under or behind the rear of the motor vehicle. The trial court, as indicated above, found that the boy intended to light the spot but did not intend to burn up the automobile. The statements of three of the four youngsters given shortly after the incident indicate the contrary. While it is true that the minor defendant, in his testimony, stated that he did not intend to burn the Cadillac, this statement is in contradiction to the statements made by the other parties. We find that the decision herein is against the manifest weight of the evidence. While the general rule is that we should not substitute our judgment for that of the trial court, who is in a better position to ascertain the facts, nonetheless, in the case before us, considering the totality of the facts presented and the statements of the other three young people present and defendant's prior statement that he saw gasoline dripping from the car it is obvious that the defendant Sapp did, in fact, intend to ignite the motor vehicle in question. We find that the burning of the automobile was, from the evidence adduced herein, an intended result of an intentional act. From the foregoing, we find that the instant exclusionary clause does apply to the instant case and, accordingly, we reverse the judgment below. We do not find that the clause in question is ambiguous as applied to the facts presented herein.

Judgment reversed.

Mr. JUSTICE THOMAS J. MORAN, specially concurring:

Despite other jurisdictions holding to the contrary, I do not feel that the words "intended" and "expected" are synonymous or that they must

necessarily be equated. Were they synonymous, no purpose would be served by including both within the exclusionary clause. The two words apply to situations which differ from each other in that a different degree of proof is necessary for each—a greater degree of proof being required to establish intent than to establish expectation.

In the instant case, the damages caused by the boy's act was not accomplished by design or plan (not intended), but was of such a nature that it should have been reasonably anticipated (expected).

Mr. JUSTICE SEIDENFELD, dissenting:

In reversing the decision of the trial court, the majority directed its attention primarily to the question of whether the minor defendant intended or expected to burn the automobile when he ignited the discolored area under or behind the rear of the motor vehicle. It was concluded that the burning of the automobile was the intended result or, in the case of the specially concurring opinion, the expected result of an intentional act and that the finding of the trial judge was against the manifest weight of the evidence. It is from this holding that I must respectfully dissent.

The evidence shows that in the early afternoon of September 6, 1972, the defendant Robert Sapp was visiting his friend Brian Moberly who lived about 1½ blocks from where the vehicle in question was parked. At approximately 1 P.M. the defendant began walking to nearby Andrews Park where he was joined by Brian who followed close behind. There they met two girls, Mary Drnek and Pam Heron. About 15 minutes later the four went to pick grapes on the property where the Cadillac was located. Shortly thereafter the girls left and began walking back to Andrews Park. Defendant then asked Brian for cigarettes and matches. Brian did not have cigarettes but he did have matches which he gave to the defendant. Defendant testified that he saw a discoloration about one-half foot behind the bumper of the car. He and Brian referred to it as an oil spot, although at that time they were not exactly sure what it was. Claiming that he was angry because Brian did not have any cigarettes, defendant flicked several lighted matches at the spot from about 6 to 8 feet away. The third match thrown ignited the spot and defendant fled in the direction of Mary Drnek and Pam Heron. When he got to them he told them the spot under the car had lit, realizing at that time that it had to be gasoline since oil would have required greater heat to ignite. The girls apparently returned to the scene of the fire where Brian had unsuccessfully attempted to scrape out the flames.

Shortly thereafter Officer Lindquist arrived to investigate the incident. Brian, Pam and Mary were standing together and Officer Lindquist had

a conversation with the three of them in the yard next to the car. Portions of the statements taken of these persons as well as that of defendant are set out in the text of the opinion and much emphasis has been placed upon their content by the majority.

Among other things, these statements seem to indicate that defendant was aware of a gasoline leak before flicking the matches at the discolored area and that he had spoken of throwing lighted matches at the gasoline or of lighting the car. These statements, however, are those of young teenagers taken in the context of what appears to have been a joint conversation. They are fragmented and at times inconsistent. Moreover, they were almost totally contradicted by the in court testimony of Robert Sapp and Brian Moberly.[1]

In his testimony, Brian Moberly clearly stated that there had been no conversation between defendant, himself or the girls about harming or causing injury to the vehicle in any way nor any discussion about any substance on the ground when the girls were present. Moreover, he testified that he had not seen any gas leaking from the car and that there had been no discussion about gasoline prior to the ignition of the car. Brian admitted making the signed statement given to Officer Lindquist but claimed that he did not read it carefully before signing it. He was unable to remember telling Officer Lindquist anything about a gas leak and stated that it was only after the spot had ignited that he became aware of the presence of gasoline.

Robert Sapp testified in a similar fashion. He claimed that there had been no mention of any gasoline dripping from the car nor any discussion about injuring the car in any way. He further claimed that he had not noticed any gasoline dripping from the car nor the smell of any gasoline prior to the car's ignition. He had not realized that the spot was gasoline until after it had ignited and it may be inferred from his testimony that any subsequent references he made to the presence of gasoline were based upon this after-the-fact realization.

Defendant refuted his signed statement, claiming that he did not tell Officer Lindquist that he saw something leaking from the car, that he did not notice Officer Lindquist put the word "gas" in the statement and that it was Officer Lindquist who used the term "gas" in his conversation with him. Defendant clearly stated that if he had known that the spot was gasoline he would not have flipped matches at it and, upon initial investigation, he told Officer Lindquist that he did not mean to burn the car.

---

[1] Neither Pam Heron nor Mary Drnek were called as witnesses.

The trial judge commented, at length, regarding the fact questions to be decided. He stated that in his belief defendant flipped the matches at the oil spot intending to light the oil; however, he indicated that when the matches were flipped at the oil spot defendant did not intend to burn the Cadillac. The judge stated:

> "I might say I am mindful of the fact that this boy was fourteen years of age, and his expectation and intention was somewhat affected by the Court's view of the subjective regard for what he was thinking of. And I'm not unmindful of the fact that the police felt that the result of burning the Cadillac was unexpected. The officer said that in so many words."

The court concluded its commentary with the finding that defendant expected the oil spot to ignite but did not expect the Cadillac to burn. This conclusion is reiterated in the court's order of March 30, 1973, wherein it was stated.

> "6. The evidence adduced at trial establishes that ROBERT SAPP did not intend or expect to set fire or damage the 1966 Cadillac * * *."

The trial judge's acceptance of the credibility of witnesses despite existence of impeaching evidence is peculiarly the function of the trier of fact who has the superior opportunity to see and hear testimony and determine its truthfulness and therefore the amount of weight which should be attributed to it. (See *Albertina v. Owens* (1971), 3 Ill.App.3d 703, 704-705.) His findings under such circumstances are entitled to great weight on appeal and should not be set aside unless they are palpably erroneous. (See *Fisher v. City of Aledo* (1974), 23 Ill.App.3d 190, 192; *Smith v. Realcoa Construction Co.* (1973), 13 Ill.App.3d 254, 260.) Here, the question of intent was an issue of fact (see also *Jannes v. Microwave Communications, Inc.* (1973), 16 Ill.App.3d 582, 591) determined in a close case where the evidence was conflicting. In such cases, where findings of fact must necessarily be dictated to a large extent by impressions of credibility received by the trial judge from his observations of the witnesses, it is particularly true that an appellate court may not disturb the findings of the trial court unless they are manifestly against the weight of the evidence. *Marcano v. Chicago Transit Authority* (1974), 22 Ill.App.3d 427, 431; see *Geist v. Lehmann* (1974), 19 Ill.App.3d 557, 561.

In order that the judgment be against the manifest weight of the evidence, it must appear that conclusions opposite to those reached are clearly evident (*Marcano v. Chicago Transit Authority* (1974), 22 Ill. App.3d 427). This is simply not true of the conclusions reached by the

trier of fact in the present case. Rather it seems clear from the evidence that defendant was engaged in horseplay. (See *Vermont Mutual Insurance v. Dalzell* (1974), 52 Mich. App. 686, 218 N.W.2d 52.) Although he may well have been guilty of gross negligence or acts amounting to an utter indifference to or conscious disregard for the property of another, it does not follow, ipso facto, that he was guilty of deliberate or intentional destruction of property (see *Cowan v. Insurance Company of North America* (1974), 22 Ill.App.3d 883, 895). Certainly it cannot be concluded on the facts adduced that this youth, age 14, without any apparent motive, did in broad daylight and in the presence of several other persons, intentionally burn the automobile in question. And so the trial court held.

An analysis of the several insurance cases cited in the court's opinion (see also *Phoenix Insurance Co. v. Helton* (Fla. App. 1974), 298 So. 2d 177; *Hartford Fire Insurance Co. v. Wagner* (1973), 296 Minn. 510, 207 N.W.2d 354; *Rankin v. Farmers Elevator Mutual Insurance Co.* (10th Cir. 1968), 393 F.2d 718; *Kraus v. Allstate Insurance Co.* (3d Cir. 1967), 379 F.2d 443; *State Farm Fire & Casualty Co. v. Muth* (1973), 190 Neb. 248, 272, 207 N.W.2d 364; and *Terito v. McAndrew* (La. App. 1971), 246 So.2d 235) manifests a distinction between those types of actions which have yielded an "intended" or an "intended or expected" result and those which have not. The acts of defendant are not comparable with murder (*Hartford Fire Insurance Company v. Wagner* (1973), 296 Minn. 510, 207 N.W.2d 354), a deliberate battery (*Terito v. McAndrew* (La. App. 1971), 246 So.2d 235), the explosion of a bomb (*Kraus v. Allstate Insurance Company* (3rd Cir. 1967), 379 F.2d 443), or a purposeful motor vehicle collision (*Rankin v. Farmers Elevator Mutual Insurance Company* (10th Cir. 1968), 393 F.2d 718). I am unable to conclude, therefore, that a result other than that reached by the trial court is clearly evident.

Here the trial judge has observed the witnesses, heard the testimony, viewed the exhibits and made careful and complete findings of fact. It is his conclusion that defendant neither intended nor expected the Cadillac to burn and I would affirm that holding.