AETNA CASUALTY & SURETY COMPANY, Plaintiff-Appellant, *v.* RALPH L. DICHTL, Adm'r of the Estate of Julie Young, Deceased, *et al.*, Defendants-Appellees.

Second District   No. 78-150

Opinion filed October 30, 1979.—Modified on denial of rehearing January 11, 1980.

Slovacek & Slovacek, of Crystal Lake, for appellant.

O'Reilly & Cunningham, and Mirabella & Kincaid, both of Wheaton, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of this court.

Plaintiff, Aetna Casualty & Surety Company (Aetna), appeals from an order of the Circuit Court of Du Page County which awarded a total of $153,165.29 to defendants Julie Young[1], its insured, and the Gary-Wheaton Bank (as administrator of the estate of Joseph Young), a judgment creditor of the insured.

The instant lawsuit was commenced when Aetna filed a complaint for declaratory judgment against defendant Julie Young requesting the following relief: (a) a declaration that a claim contained in a complaint filed by the Gary-Wheaton Bank as administrator of the estate of Joseph Young, Jr., naming Julie Young as defendant is not covered by Aetna's Homeowner's Insurance Policy; (b) a declaration that Aetna has no duty to defend Julie Young against the allegations set forth in that complaint; and (c) a declaration that Aetna has no duty to indemnify Julie Young against any judgment which may be entered against her on the allegations set forth in that complaint.

The complaint which Aetna refers to in its declaratory judgment action charges Julie Young with killing her husband and prays an award of money damages for the benefit of the minor child of the parties. Julie Young did, in fact, kill her husband, although she was found not guilty of

---

[1] Defendant Julie Young died during the pendency of this suit. Ralph L. Dichtl, the administrator of her estate, replaced her as a party defendant. For the sake of clarity, this opinion will refer to Julie Young and not her legal representative.

his murder by reason of insanity in the criminal trial. Subsequent to her acquittal, the trial court in the criminal case found Julie Young had regained her sanity.

Aetna grounds its complaint for declaratory judgment on the assertions that its policy does not apply to "bodily injury * * * which is either expected or intended from the standpoint of the insured" and the complaint filed by Gary-Wheaton Bank charging Julie Young with the death of her husband "alleges only injury or damage expected or intended by Julie Young." As the death of her husband was either "expected" or "intended" by Julie Young, Aetna claims it has no duty to defend or indemnify her in the civil action filed by the administrator of her husband's estate.

Julie Young filed an answer to Aetna's complaint for declaratory judgment denying its material allegations and requesting the trial court to direct Aetna to provide a defense to and indemnify her from all claims set forth in the complaint filed by Gary-Wheaton Bank. Thereafter, Aetna filed a motion to add the Gary-Wheaton Bank to its declaratory judgment action as an additional party defendant so that the Bank could assert any interest it might have in the controversy between Aetna and Julie Young.

During the same time span, the Gary-Wheaton Bank twice amended its complaint in its suit against Julie Young by adding two additional counts. Count II alleged that Julie Young inflicted the blows which killed her husband "in a state of legal insanity" and count III alleged that she was negligent and careless in that (a) she consumed various medications which made her irrational; (b) she failed to secure psychiatric treatment; (c) she negligently permitted herself to inflict the blows which killed her husband. Count III of the amended complaint was dismissed on motion before trial. Aetna acknowledges that after the filing of each amended complaint it was tendered the defense of the suit but each time refused on the same basis as its first refusal, *i.e.*, that the complaint charging Julie Young with battering her husband was not covered by Aetna's Home-owner's Policy.

While Aetna's declaratory judgment action was pending, the underlying action of the Gary-Wheaton Bank versus Julie Young went to trial in the Circuit Court. That trial resulted in a verdict and judgment in favor of the Gary-Wheaton Bank against Julie Young in the amount of $150,000.

After the judgment was entered, Julie Young filed a counterclaim against Aetna in the declaratory judgment proceeding alleging that Aetna failed to defend her despite timely demands by her that it do so; that the jury returned a verdict against her in the amount of $150,000 and prayed for damages from Aetna in the amount of $100,000 which was the limit of Aetna's policy. The Gary-Wheaton Bank also filed an appearance and

counterclaim against Aetna alleging that it was a judgment creditor of Julie Young as a result of the judgment it obtained against her and prayed for the entry of an order directing Aetna to pay $150,000 plus interest and costs to satisfy the judgment.

Aetna filed a motion to strike and dismiss Julie Young's counterclaim and an answer to Gary-Wheaton's counterclaim in which it alleged that it was unaware of the trial date in the case of Gary-Wheaton Bank versus Julie Young.

The Gary-Wheaton Bank then moved for summary judgment on its counterclaim and Aetna moved for summary judgment on its complaint for declaratory judgment and a dismissal of the counterclaims of both defendants.

Pursuant to the motions of the parties, the trial court entered its final judgment order denying Aetna's motion for summary judgment and all of its relief; granting Gary-Wheaton's motion for summary judgment on its counterclaim and entering judgment against Aetna in the amount of $150,000; and granting Julie Young attorneys' fees of $3,165.29 for Aetna's wrongful refusal to defend her. Aetna filed a post-trial motion attacking the judgment requesting, *inter alia*, that the trial court state "the findings and conclusions upon which the Court's judgment is based." Aetna's post-trial motion was denied and this appeal ensued.

On appeal Aetna contends (1) that it had no contractual duty to defend Julie Young in the action brought against her by the Gary-Wheaton Bank, (2) that it had no duty to indemnify the insured against the adverse judgment entered against her, and (3) that in no event was it liable for any amount in excess of the $100,000 policy limits.

Gary-Wheaton Bank has argued that Aetna should be estopped from asserting the defense of non-coverage in this action because it breached its duty to defend its insured, Julie Young, in the prior civil action for damage arising out of her husband's death. We disagree.

■■ ■ As a general rule, the duty of an insurance company to provide a defense in litigation filed against its insured is to be determined solely from the allegations of the complaint. Once the complaint alleges facts which are within, or potentially within, the coverage of the policy, then the duty to defend is established—despite the fact that the allegations may be groundless, false or fraudulent. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) It is also settled that an insurer who wrongfully refuses to defend such an action may be estopped from later raising the defense of noncoverage in a subsequent action against it filed by the insured or a judgment creditor (*Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315) although the question of whether the insurer would be liable for a judgment in excess of the policy limits is still unsettled. Compare *Elas v.*

*State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, with *Reis v. Aetna Casualty & Surety Co.* (1979), 69 Ill. App. 3d 777, 387 N.E.2d 700.

In *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, the Illinois Supreme Court held that where there is a serious conflict between the interests of the insurance company and the insured, the insurer's failure to participate in the defense of the action filed against the insured would not estop it from raising the defense of noncoverage in a subsequent proceeding. In *Thornton* the plaintiff and several friends were drinking in a tavern owned by the insured when they became rowdy. In attempting, unsuccessfully, to quiet the disturbance, the proprietor of the tavern struck the plaintiff on the head with a club, causing a severe laceration. The proprietor was criminally charged with, and convicted of, aggravated battery. Subsequently, the plaintiff filed a civil action against the insured in two counts—one for intentional battery and one for negligence. Because the liability policy at issue in *Thornton* contained an exclusion for intentional battery, the supreme court concluded that there was a serious conflict between the interests of the insurer and the insured, and determined that it would have been improper for the insurer to have participated in the insured's defense. Therefore, where a complaint is filed against an insured alleging several alternative theories of recovery, only some of which would bring the insured's behavior within an exclusion in the policy, the insurer's obligation to defend is "satisfied by reimbursing the insured for the costs of his defense." *Thornton*, 74 Ill. 2d 132, 152, 384 N.E.2d 335, 343; see also *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 386 N.E.2d 529.

We believe that the doctrine of equitable estoppel does not apply in this case under the rule announced by the Illinois Supreme Court in *Thornton*. Count I of the complaint filed against Julie Young in the underlying civil action charged her with intentionally killing her husband, and the homeowner's insurance policy at issue here contains an exclusion for injuries which were "intended or expected" by the insured. The insurer and the insured share a common interest in a finding of no liability. However, if liability exists, the insurer's interests would be best served by a further finding that the injury was intentional or expected thus relieving the insurer of its obligation of indemnity. Because of this conflict of interest which precluded Aetna from undertaking Julie Young's defense in the underlying civil suit, its failure to defend her in that action does not estop it from raising the defense of noncoverage in this action. Thus the trial court erred in granting the bank's motion for summary judgment on its counterclaim which was based solely on an estoppel theory.

With respect to policy limits, the general rule is that only a bad-faith failure to defend renders the insurer liable for the amount of the judgment

in excess of the policy limits. (*Reis.*) Having determined that Aetna's refusal to undertake a defense was not in bad faith in light of *Thornton*, we conclude that Aetna's liability, if any, is limited to the $100,000 policy limits. However under *Thornton*, Aetna is required to reimburse Julie Young for the costs of her defense of the civil suit which were found to have amounted to $3,165.29.

Having resolved the estoppel issue in Aetna's favor, we must now address ourselves to the question of whether the insured's behavior came within the exclusion contained in the policy of insurance. Aetna's position is that the clause "bodily injury * * * which is either expected or intended from the standpoint of the insured" is governed by an "objective" or "reasonable man" standard[2] and that under this standard Julie Young's attack on her husband would automatically come within this exclusion. We disagree.

While acts performed by an insane person do not relieve that person from civil liability for the consequences of their actions (see Prosser, Torts §135 (4th ed. 1971)), a different rule is applied when considering whether such actions are "intentional" within the meaning of an exclusionary provision in an insurance policy. The majority view is that the insured must have the mental capacity to form the requisite intent at the time that the injury is inflicted. For example, in *Ruvolo v. American Casualty Co.* (1963), 39 N.H. 490, 189 A.2d 204, the Court held that if the insured shot and killed a third party while suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason, his conduct would not come within the policy exclusion for intentional injuries. See also *George v. Stone* (Fla. App. 1972), 260 So. 2d 259; *Rosa v. Liberty Mutual Insurance Co.* (D. Conn. 1965), 243 F. Supp. 407; Annot., 2 A.L.R.3d 1238, §4(d) (1965).

Aetna argues that the above cited authorities, which were decided on policy language slightly different from that at issue here, are not controlling. The exact clause in Aetna's policy has been subjected to judicial interpretation in at least two decisions by Illinois reviewing courts. In *Badger Mutual Insurance Co. v. Murry* (1977), 54 Ill. App. 3d 459, 370 N.E.2d 295, the insured had been drinking at various bars. In

---

[2] The distinction between objective and subjective standards is illustrated by comparing the objective definition of ordinary care found in Illinois Pattern Jury Instructions, Civil, No. 10.02 (2d ed. 1971) ("When I use the words 'ordinary care', I mean the care a reasonably careful person would use under circumstances * * *. * * * That is for you to decide") with the subjective definition of criminal intent found in section 4—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 4—4) ("A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct"). In short an objective standard is governed by reasonableness; a subjective standard is governed by the actor's actual objective. The mental state of the actor would be irrelevant under the former, while it would be the determinative under the latter.

attempting to drive he struck three parked automobiles. When a police officer arrested the insured an altercation took place and the officer was injured. When the injured officer brought a civil suit, the question arose whether the defendant's homeowner's policy obligated this insurance company to undertake his defense. The appellate court found that

> "\* \* \* the record supports a finding that the defendant Murry was not so intoxicated as to be unable to realize the probable results of his actions. The defendant Murry testified that he did not believe that he was intoxicated at the time of his altercation with the appellant. We deem it significant that the evidence discloses that the defendant Murry went to the squad car unassisted and after becoming engaged in an altercation with the appellant he voluntarily quit his attacks upon the appellant when a fellow officer intervened, thereby acknowledging that he realized that further efforts on his part to injure a police officer would be useless. "An examination of the record discloses that there is ample evidence to support a finding that even if the defendant Murry was acting under the influence of alcohol he was not so intoxicated as to be unable to expect the result of his actions when he kicked the appellant." (54 Ill. App. 3d 459, 464-65, 370 N.E.2d 295, 300.)

This quotation from *Murry* indicates that the court was concerned with the extent of the insured's intoxication as this would affect his mental state. This focus on the insured's mental state suggests a subjective emphasis similar to that of criminal law. However, as an alternative basis of its holding, the *Murry* court quoted from the concurring opinion in *Farmers Automobile Insurance Association v. Medina* (1975), 29 Ill. App. 3d 224, 329 N.E.2d 430, to the effect that the insured's acts were not accomplished by design or plan (not intended) but were of such a nature that they should have been *reasonably* anticipated (expected). Aetna correctly points out that the word "reasonably" is indicative of an objective standard.

In *Medina* the defendant flipped matches upon a gasoline spot located directly behind a parked automobile. The spot ignited, burning the automobile. The trial court found that while lighting the gasoline spot was an intentional act, the burning of the automobile was an unintended result. Thus the exclusion for bodily injury or property damage either expected or intended from the standpoint of the insured did not apply. On appeal, Justice Guild speaking for this court reversed the trial court:

> "The question thus presented herein is whether the minor defendant intended to burn the automobile in question when he ignited the gasoline under or behind the rear of the motor vehicle. The trial court, as indicated above, found that the boy intended to light the spot but did not intend to burn up the automobile. The

statements of three of the four youngsters given shortly after the incident indicate the contrary. While it is true that the minor defendant, in his testimony, stated that he did not intend to burn the Cadillac, this statement is in contradiction to the statements made by the other parties. We find that the decision herein is against the manifest weight of the evidence. While the general rule is that we should not substitute our judgment for that of the trial court, who is in a better position to ascertain the facts, nonetheless, in the case before us, considering the totality of the facts presented and the statements of the other three young people present and defendant's prior statement that he saw gasoline dripping from the car it is obvious that the defendant Sapp did, in fact, intend to ignite the motor vehicle in question. We find that the burning of the automobile was, from the evidence adduced herein, an intended result of an intentional act. From the foregoing, we find that the instant exclusionary clause does apply to the instant case and, accordingly, we reverse the judgment below. We do not find that the clause in question is ambiguous as applied to the facts presented herein." (29 Ill. App. 3d 224, 228, 329 N.E.2d 430, 433.)

While not expressly stated, it is clear that the court's opinion in *Medina* focused on subjective intent. The defendant's self-serving statement that he did not intend to burn the automobile was not tested solely by the objective standard of reasonableness. Instead the defendant's testimony was outweighed by contradictory testimony of three eyewitnesses to the effect that he expressed an intent to burn the automobile. Mr. Justice Seidenfeld dissented. However, he did not object to the use of a subjective standard for determining intent; instead after an extensive review of the facts he concluded that the trial court's findings were not against the manifest weight of the evidence.

In his special concurring opinion in *Medina*, Mr. Justice Moran reasoned that a greater degree of proof is necessary to establish intent than to establish expectation. As noted above, he concluded that while the damage caused by the boy was not intended, it was of such a nature that it should have been reasonably anticipated. We agree with this concurring opinion to the extent that "expected" may be defined in terms of anticipation and that a lesser degree of proof may be required to establish expectation than to establish intent. However, we reject the view that expectation is to be judged on an objective standard. The word "reasonable" is not employed in the exclusion in question, and we reject Aetna's plea that we read in a reasonableness standard. It was Aetna which drafted the policy and if it wanted an objective standard to apply, it could have drafted its policy accordingly. We further note that the

courts of other jurisdictions that have interpreted this exact exclusionary clause have applied subjective standards. See, for example, *Vanguard Insurance Co. v. Cantrell* (1972), 18 Ariz. App. 486, 503 P.2d 962, and *Lyons v. Hartford Insurance Group* (1973), 125 N.J. Super. 239, 310 A.2d 485.

Aetna also points to the phrase "from the standpoint of the insured" as evidence that an objective standard was intended. We are not persuaded. Historically this phrase was added to homeowner's policies to protect insurance companies from a court finding that while the insured may have acted intentionally, the injured party met with an accident. (*Scott v. Instant Parking, Inc.* (1969), 105 Ill. App. 2d 133, 245 N.E.2d 124.) In any event, by referencing the insured, as opposed to a hypothetical reasonable man, this phrase, if anything, supports our imposition of a subjective or personal standard.

■■ The trial court in this case gave no reason for denying summary judgment on Aetna's claim that the injury to Joseph Young was, as a matter of law, within the policy exclusion. However, under our holding in this case, Julie Young's conduct would not fall within the exclusion if, at the time she inflicted the injuries upon her husband, she lacked the mental capacity necessary to form the intent to injure him or the expectation of his injury. The only clear evidence in the record before us[3] relating to the mental capacity of Julie Young at the time she injured her husband is the order of acquittal in the criminal trial against her where the court found her not guilty of murder and stated further "that said Not Guilty findings are based upon the affirmative defense of Insanity as alleged by the defendant and borne out by the psychiatric reports of Doctor Werner Tuteur and Doctor Richard Malek * * *." However, we do not believe that evidence of this acquittal should be admissible in this action. While proof of a criminal conviction is admissible in a later civil proceeding as *prima facie* evidence (*Thornton*), the same rule does not apply to criminal *acquittals*. As noted by this court in *Gould v. Country Mutual Casualty Co.* (1962), 37 Ill. App. 2d 265, 277, 185 N.E.2d 603, 608:

> "* * * there are stronger arguments for excluding in a civil action, proof of a prior acquittal than in cases of a prior conviction, since a judgment of conviction is a positive finding, indicating that the state has successfully borne the extraordinary burden of proving the relevant facts beyond a reasonable doubt, whereas the acquittal, does not purport to be a judgment of innocence but is

---

[3] In its petition for rehearing, Gary-Wheaton Bank argues that the testimony of Dr. Malek and an offer of proof of testimony of Dr. Tuteur from the civil suit against Julie Young are before this court. While this evidence does appear in the common law record of this case, there is no clear indication that it was admitted or considered below. Moreover, at best this evidence concerns intent and does not go to the alternative grounds for exclusion: expectation of injury.

merely a negative statement that the proof necessary for a conviction was not forthcoming." (Citing Annot., 18 A.L.R.2d 1287, 1289.)

Thus the issue of mental capacity to form the intent to injure or expectation of injury remain contested issues of fact and therefore the trial court correctly denied Aetna's motion for summary judgment. Ill. Rev. Stat. 1975, ch. 110, par. 57.

In sum, we affirm the trial court's denial of Aetna's motion for summary judgment and its awarding the defendant, Julie Young, attorney's fees of $3,165.29. The balance of the judgment below is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part; and remanded.

SEIDENFELD, P. J., and WOODWARD, J., concur.