246 So.2d 235 (1971)
Albert A. TERITO, Plaintiff-Appellee,
v.
John C. McANDREW, Jr., et al., Defendants-Appellants.
No. 8236.
Court of Appeal of Louisiana, First Circuit.
March 15, 1971.
*236 Alex Wall of Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for plaintiff-appellant.
Dennis R. Whalen, Baton Rouge, for defendants-appellants.
Frank Coates, Jr., of Taylor, Porter, Brooks & Phillips, James E. Moore of Franklin, Moore, Beychok & Cooper, and Robert Kennon, Jr., of Kennon, White & Odom, Baton Rouge, for plaintiff-appellee.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
SARTAIN, Judge.
This is a suit for personal injuries sustained by plaintiff Albert Terito as the result of an altercation in the lounge of the Oak Manor Motor Hotel in Baton Rouge. Terito suffered a severe injury to his right knee and aggravated an existing injury to his left ankle after defendant McAndrew knocked or shoved him off a bar stool and fell on top of him. Also joined in this action *237 were St. Regis Pulp and Paper Corporation, employer of McAndrew, the Oak Manor Motor Hotel and its insurer, Maryland Casualty Company, and the Fire and Casualty Insurance Company of Connecticut, which was McAndrew's personal liability insurer under a homeowner's policy.
The trial judge found that McAndrew was solely responsible for the altercation, rejecting his argument that Terito had provoked the attack. The judge dismissed the suit as to the Oak Manor and its insurer, finding that there was no evidence that prior to the incident McAndrew was noticeably intoxicated and prone to violence so that the Oak Manor employees should have taken steps to prevent such an occurrence. The suit was also dismissed as to St. Regis on a finding that McAndrew was not in the course and scope of his employment, or acting in furtherance of any interest of St. Regis, at the time of the incident. Finally, the trial judge dismissed the suit as to the Fire and Casualty Insurance Company sued directly by Terito and by third party petition by McAndrew, on the basis of policy language which restricted coverage to an accident which results in bodily injury "neither expected nor intended from the standpoint of the insured", finding that McAndrew expected and intended to hit Terito, although the injuries actually resulting may not have been specifically contemplated, and that such conduct was not covered.
Judgment was thus granted in favor of Terito and against McAndrew in the amount of $10,075.20, including $8,500.00 for physical injuries and medical expenses and $1,575.20 for sick leave benefits used by Terito as a result of the injuries.
We find that the conclusions of the trial judge are correct in all respects and affirm that judgment.
Both Terito and McAndrew have appealed the dismissal of the suit as to McAndrew's employer, St. Regis Pulp and Paper Corporation, and as to his homeowner's insurer, Fire and Casualty Company. McAndrew also reurges his contention that Terito was an officious intermeddler and provoked the attack. Terito further contends that the amount of the judgment was inadequate and also that the dismissal of the suit as to Oak Manor was error. In oral argument, however, counsel for Terito conceded that no case had been proved against Oak Manor and we find ample justification in the record for that concession.
The evidence established that McAndrew was a sales representative for St. Regis and was frequently in Baton Rouge on business trips. He always stayed at the Oak Manor and frequently entertained prospective customers with food and drink. He was not only encouraged by St. Regis in this sales technique but also reimbursed for all such expenditures. On the night of November 9, 1967, McAndrew had been engaged over dinner and drinks in business negotiations with a representative of a Baton Rouge industry and had successfully completed a sale. After dinner, they went to the piano bar in the Oak Manor lounge and drank until about 1:00 a. m. on the morning of November 10, when the pianist quit playing and that portion of the lounge closed. At that point McAndrew had had about four or five stingers on the rocks but did not feel he was intoxicated. He and his guest parted ways and McAndrew waited to receive the check and sign it. After he did this, he decided he would get another drink in a paper cup and retire to his room. It was not clear whether he had an unfinished drink which had been picked up by a waitress when he went to the restroom or whether he wanted a new drink. McAndrew thought his unfinished drink had been picked up. In any event, he went to the main bar and demanded a drink in rather loud and profane terms. Those present at this time were Mary Watson, the mixologist behind the bar, and the plaintiff Terito, who was seated on a stool drinking his second scotch and water of the night. His first had been at the piano bar a few hours earlier where his attention had been drawn to McAndrew, who was *238 requesting songs in a rather loud voice but who did not appear obnoxious or violent.
Mary Watson refused to serve McAndrew since she was in the process of closing the main bar. She had known him for several years and did not think this argument presented any particular threat to her. She said she neither requested nor needed any help from Terito when McAndrew repeated his demand for a drink. However, Terito had the conviction that such offensive language should not be used in front of a lady and made a couple of statements to that effect, addressed, he said, to Mrs. Watson but obviously within the hearing of McAndrew. In substance, Terito said that if anyone talked to him in that manner he would get the back of his hand. Mrs. Watson and Terito said that at that point McAndrew charged Terito, swinging and missing, but knocking Terito off the stool and falling on top of him. McAndrew's version was that he had turned to leave, resigned to the fact that he would get no drink, and that Terito had made a profane comment about him which struck a nerve and his charge followed. Mrs. Watson and Terito denied this version and the trial judge believed their account.
The first issue of liability is whether Terito's intrusion into the argument over the drink was a provocation sufficient to constitute a legal defense by McAndrew to an action for battery.
This court, in Johnson v. Princeville Canning Company, 205 So.2d 449, 450 (1st La.App.1967), applied the following rule:
"It is the law of this State that where one provokes a difficulty by words or conduct which might be calculated to arouse resentment or fear on the part of another, he cannot recover for a battery committed by the other, provided that under the circumstances physical retaliation might reasonably be anticipated as a result thereof. Smith v. Parker, 59 So. 2d 718 (2d La.App.1952). Whether or not provocation is sufficient to justify a battery is a matter of fact to be determined in the light of the circumstances of each case."
Two more recent cases in which that decision is cited discuss such provocation as characterized by aggression and add that the defense is not available to one who uses force in excess of that necessary to repel the apparent aggression. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Buchert v. Metropolitan Life Insurance Company, 219 So.2d 584 (4th La.App. 1969).
We agree with the trial judge's finding of fact that Terito's comments were probably not sufficiently aggressive to provoke an attack. There was no overt move or gesture made toward McAndrew. We do believe, however, that the comments were somewhat inflammatory and under the circumstances Terito cannot be said to have been completely surprised by the confrontation that followed. But McAndrew clearly used physical force which was excessive under these circumstances and that fact alone would defeat his defense of provocation.
McAndrew's insurer denied liability under the terms of its policy. As originally issued, the policy excluded coverage for "bodily injuries caused intentionally by or at the direction of the insured". Prior to the incident involved in this suit, the policy was amended to provide coverage for bodily injury resulting from an "occurrence", which term was defined as follows:
"An accident, including injurious exposure to conditions, which results, during the endorsement period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
Terito urges that his injuries resulted from an accident or unintentional act and points to an admission contained in McAndrew's answer to the original petition, that "because of an intoxicated condition * * * he stumbled and fell against *239 plaintiff, injuring him in a manner not intended nor expected." McAndrew testified that he intended to shut Terito's mouth, not fracture his knee, so that the policy should cover the knee injury.
We do not think the admission in the pleading is at all persuasive. If McAndrew would be found liable for the incident, it would clearly be to his benefit (and to Terito's, from a standpoint of financial recovery) to deny that any intent was possible due to intoxication and to proceed to collect from the insurer. Such an admission in the answer to the main demand is not binding on the insurer denying coverage on the theory that the act was intended. In fact, McAndrew denied at trial that he was intoxicated and Mrs. Watson corroborated that fact. He admitted that he intended to hit Terito to shut the latter's mouth. Even if he was intoxicated, as found by the trial judge, he obviously was able to form the necessary intent to commit a battery. Fire and Casualty contends that such an incident cannot be called an "accident", within the policy terms, and must be an intentional act. Thus, all direct and natural consequences flowing therefrom are considered in fundamental tort law to have been intended by the actor. We agree with this contention, for it would indeed be illogical to say that an intentional attack may become an "accident" if the resulting injury is not one specifically contemplated by the attacker.
The final issue relative to liability is whether McAndrew's employer, St. Regis, is responsible for the intentional tort of its employee. One premise set forth is that McAndrew was predisposed to violence, that St. Regis knew or should have known this and was therefore negligent in sponsoring his drinking activities in furtherance of company interests. The trial judge found, and we agree, that there was no evidence of any such predisposition or that, prior to the incident involved herein, McAndrew had ever been in a fight or otherwise troublesome during his periodic visits at the Oak Manor. It is also argued that, in these circumstances, the Oak Manor lounge became the business premises and 1:00 a. m. was during working hours. Thus, St. Regis should be responsible for an incident arising out of its employee's condition which resulted from the planned entertainment on behalf of the company's interests. Such an incident stemming from intoxication, it is argued, is foreseeable.
This line of reasoning seeks to extend the doctrine of the employer's vicarious liability for the torts of an employee beyond the limits recognized in our jurisprudence. It also ignores the facts in this case that McAndrew's business customer had already left the lounge, that McAndrew had already signed the check for their drinks, that he was no longer acting in furtherance of his employer's objectives, but rather that he was attempting to get a drink for himself before retiring to his room for the night. At that time he became involved in an argument completely unrelated to his employment and proceeded to commit an intentional tort against a man who was a stranger both to him and his company. These facts do not indicate that the damage to Terito was occasioned by McAndrew "in the exercise of the functions in which they were (he was) employed", La.C.C. Art. 2320, or, in the jurisprudential phrase, that he was in the course and scope of his employment.
The case of Bradley v. Humble Oil and Refining Company, 163 So.2d 180 (4th La.App. 1964), holds that, for the employer to be held liable, it is absolutely necessary that such a wrong occur in the course and scope of the servant's employment. Further, while that phrase may be construed liberally in workmen's compensation cases, the interpretation is more strict where an employee intentionally inflicts injury on third persons. The court stated, at 163 So.2d 184, the following:
"* * * [A]n employer is not vicariously liable merely because his servant or employee commits an intentional tort *240 on the business premises during working hours. No vicarious liability will attach in such a case unless the employee acts within the ambit of his assigned duties and also in furtherance of his employer's objectives."
We are convinced that the rules of the Bradley decision, as applied to the instant case, prohibit a finding that St. Regis is vicariously liable for the tort of McAndrew.
On the issue of quantum, plaintiff contends that the judgment amount of $10,075.20 is inadequate and relies exclusively on the medical testimony of the treating physician, Dr. Thomas Campanella, an orthopedic surgeon. Plaintiff suffered a comminuted fracture just below the right knee and aggravated an existing injury to his left ankle. The fracture never healed and it was Dr. Campanella's opinion that there would never be a natural fusion or joinder of the bones and that future surgery for some bone grafting was indicated. He placed Terito's disability at thirty percent of the right knee and ten percent of the left ankle and estimated the cost of future surgery would be $816.00, including fees and hospital care.
The trial judge considered all of these factors in his reasons for judgment and concluded as follows:
"There can be no doubt as to the seriousness of the plaintiff's injuries and in view of the disability determined by the doctor, the Court believes the sum of $8,500.00 should be adequate to compensate him for his injuries, to include any future medical services."
To that amount was added $1,575.20 which represented the amount of sick leave benefits used by the plaintiff during his hospitalization and recovery from the injuries.
The trial judge did not treat these injuries lightly and set an award which he believed to be proper and adequate. We are not able to say that he abused his discretion in this respect.
For the above and foregoing reasons the judgment of the lower court is affirmed. The costs of this appeal are to be borne by defendant-appellant, John McAndrews, Jr.
Affirmed.