315 So.2d 74 (1975)
HOME INSURANCE COMPANY
v.
DEGELOS BROTHERS GRAIN CORPORATION et al.
No. 6689.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1975.
Rehearing Denied April 17, 1975.
On Rehearing June 11, 1975.
*75 Bienvenu & Culver, H. F. Foster, III, New Orleans, for Home Ins. Co., plaintiff-appellant.
Hammett, Leake, Hammett, Hayne & Hulse, Craig R. Nelson and Robert E. Leake, Jr., New Orleans, for American Manufacturers Mut. Ins. Co., defendant-appellee. *76 Henican, James & Cleveland, Carl W. Cleveland and Joseph P. Henican, III, New Orleans, for Degelos Brothers Grain Corp., defendant-appellee.
Before GULOTTA, STOULIG and BOUTALL, JJ.
STOULIG, Judge.
Plaintiff, Home Insurance Company, paid its insured, Drexel Radio Co., for merchandise stored in the Public Commodity Warehouse in the City of New Orleans which sustained water damage while a grain fire in the adjoining storage compartment was being brought under control. Subrogated to Drexel's rights upon payment of its claim, plaintiff filed suit against Degelos Brothers Grain Corporation (Degelos), lessee of the storage space where the fire originated, and its liability insurer, American Manufacturers Mutual Insurance Company (American),[1] for $9,464.36,[2] the net payout to its insured. It alleged Degelos' employees negligently permitted its stored grain to ignite through spontaneous combustion by failing to aerate this commodity and keep its internal temperature at a safe level.
In a joint answer defendants (1) denied negligence; (2) pleaded contributory negligence; and (3) "* * * specifically pleaded all of its [policy's] terms, conditions and limitations * * *."
Degelos filed a third party claim, against its insurer for indemnification for any amount it might be cast in judgment, and with respect to this petition, American raised two policy defenses: (1) there was no "occurrence" as defined by the policy that would render it liable; and (2) plaintiff's damage was caused by the intentional acts of its assured that negated coverage.
From an adverse judgment dismissing its suit, plaintiff has appealed. We reverse this result on a finding plaintiff established Degelos' negligence as a proximate cause of its damage and defendants failed to prove their affirmative defense of contributory negligence. No appeal having been taken by either party thereto, the dismissal of the third of the third party demand is not an issue before us.
The facts are not seriously disputed. On September 23, 1970 Drexel stored radio and electronic equipment in Compartment K-13 of the Public Warehouse and Degelos stored bulk soybeans in Compartment K-14. Constructed of concrete blocks, the storage cubicles measured approximately 30 feet wide and 100 feet long and abutted each other at the rear width. The dividing wall of concrete was 12 inches wide; however there was a passageway between the two cubicles that was permanently closed by a wooden partition on either side of the concrete wall.
On this day, Hunter Peterman, Degelos' superintendent, arrived at the storage cubicle between 8 and 8:30 a.m. and discovered smoke billowing from the grain. Peterman testified the fire probably resulted from a heat buildup in the soybeans, which had been stored to a depth of approximately 6 feet. He stated, "If the grain probably had been circulated, perhaps this would not have occurred." Peterman first thought the fire could be controlled by using fire extinguishers. Because the burning area was adjacent to the rear wall near the passageway on the Degelos side, he tore down part of the wooden partition on the Drexel side in order to direct the fire extinguisher *77 to the source of the fire. Peterman noted the heat had been sufficiently intense to create sparks on Drexel's wooden partition. When this attempt proved futile, he, with the help of personnel of the warehouse lessor, the Board of Commissioners, Port of New Orleans (Dock Board), hooked up a 2-inch hose to extinguish the smoldering grain. Before turning on the water, Degelos' employees built a sand levee at the base of the passageway to prevent water from seeping through to Drexel's compartment.
Meanwhile, Drexel personnel, assisted by Dock Board manpower, began to move its merchandise to other sections of its storage area or on pallets to prevent water damage. However, before all the radio and electronic stock could be relocated or palletized, the water poured into the burning grain seeped through the passageway and damaged a portion of Drexel's inventory.
The defense of contributory negligence is based on Peterman's assertion he advised one of Drexel's representatives that its merchandise should be moved because of the danger of water seepage through the partition. He further stated his offer to have men assist in moving the stock was rejected until the water began to appear in the Drexel compartment.
This testimony is not corroborated by Leon Starling, maintenance superintendent of the Dock Board. He arrived on the scene at approximately 9 a.m. and did not recall hearing Peterman caution Robert Guillot, Drexel's representative, about moving the material. In fact Starling testified as soon as they discovered the problem, everyone was working together to palletize or relocate Drexel's stock. There were between 1,500 and 2,000 cardboard cartons in the storage area, and the damage occurred because the water flowed through the partition before the workmen finished securing the stock. Starling's testimony confirms Guillot's assertion the material was moved as rapidly as possible.
The evidence preponderates to the effect the fire originated through the negligence of Degelos' agents. Not only did Peterman testify bulk grain should be periodically inspected and ventilated to dissipate a heat buildup sufficient to cause spontaneous combustion, but also he acknowledged Degelos' failure to do so probably caused the fire. To establish causality, plaintiff simply had to prove it is more probable the failure to inspect and aerate the stored soybeans caused the fire than any other factor.[3]
Peterman, defendant's own superintendent who had 30 years' experience in the handling of grain, testified it was the custom of the trade to periodically aerate stored grain commodities to prevent internal combustion; he was unable to recall the last time prior to the fire that this grain had been ventilated; the compartment where the grain was stored was leased exclusively to Degelos; the compartment was kept locked; and he had immediate and direct control of the compartment and its contents and also kept its only key. This uncontroverted evidentiary predicate is a sufficient basis to conclude that defendant's negligent act of omission, in failing to perform the customary procedures of the trade in the storage of grain, was the more probable cause of the damage in the absence of any credible evidence tending to sustain equally plausible other causes for its occurrence. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).
Having found defendant Degelos negligent, we next consider whether Drexel's actions proximately caused or contributed to the damage. Contributory negligence is an affirmative defense and defendants have the burden of proving facts *78 upon which this legal conclusion may be based.[4]
In the instant case, the uncorroborated and disputed statement of Peterman that Guillot did not act promptly in moving the merchandise does not meet the standard of proof required to support the plea.
This is not to say we find Peterman's testimony questionable from the standpoint of credibility. Conversely, we are impressed with his candor in discussing the probable cause of the fire. But in the confusion of the moment it is highly probable Guillot did not understand Peterman was offering to furnish manpower to move the cardboard cartons. The fact that the employees of Drexel and the Dock Board joined forces immediately thereafter to palletize and relocate as much merchandise as possible demonstrates Guillot's willingness to remove the inventory from a place where it could be damaged by water. If there was a delay in moving the cartons, it is not established what damage, if any, could have been minimized had Drexel acted more promptly. Further the record indicates it would have been safe to delay the fire-fighting effort and afford Drexel more time to move the merchandise.[5] These factors all bear on the plea of contributory negligence and as the record is constituted, we find the proof insufficient to support the plea.
We need not consider the policy defenses raised only in connection with the third party action because no appeal was taken from that part of the judgment dismissing the third party claim.
For the reasons assigned the judgment appealed from is reversed and it is now ordered that there be judgment in favor of plaintiff, Home Insurance Company, and against Degelos Brothers Grain Corporation and American Manufacturers Mutual Insurance Company in solido for the sum of $9,464.36, plus legal interest from judicial demand. Defendants are to pay all costs.
Reversed and rendered.

ON APPLICATIONS FOR REHEARING
PER CURIAM.
Defendants, Degelos Brothers Grain Corporation and American Manufacturers Mutual Insurance Company, filed applications for rehearing.
The application of Degelos Brothers Grain Corporation for a rehearing is denied.
A rehearing is granted to American Manufacturers Mutual Insurance Company for the limited purpose of reurging the issue that under the policy defenses asserted the contract of insurance did not afford liability coverage to Degelos Brothers Grain Corporation against plaintiff's claim. The rehearing will be decided, without oral argument, on briefs to be submitted by American Manufacturers Mutual Insurance Company on or before May 8, 1975, and by Home Insurance Company and by Degelos Brothers Grain Corporation on or before May 27, 1975.

ON APPLICATION FOR REHEARING GRANTED
PER CURIAM.
We granted this rehearing for the limited purpose of determining whether American Manufacturers Mutual Insurance Company (American) must pay the judgment *79 rendered herein on behalf of its insured, Degelos Brothers Grain Corporation. (In our original opinion, we erroneously stated the question of coverage was not before us.)
American denies coverage because it contends the damage did not arise from an "occurrence" defined as follows in the policy:
"* * * [A]n accident, including injurious exposure to conditions, which results * * * in * * * property damage neither expected nor intended from the standpoint of the insured * * *." (Emphasis added.)
The insurer argues Peterman, clothed with corporate authority, intentionally turned water on the smouldering fire and should reasonably have expected the water to damage Drexel's merchandise.
This argument has no merit. The exclusion quoted is designed to prevent the insured from insuring against damage caused to a third person by his own intentional act. In this case the water damage resulted from efforts to contain a fire, not originated by Degelos' design or intention. In deciding whether there is coverage, we must consider whether the original catastrophic happening was intended or expected, not the damage caused as a consequence of attempting to confine the fire and minimize the damage it caused. American cited Terito v. McAndrew, 246 So.2d 235 (La. App. 1st Cir. 1971), to support its argument but this is clearly distinguishable because the insured, after becoming intoxicated, initiated the chain of events that caused the loss. But even if we were to treat the turning on of the water by Peterman as an independent "occurrence" from which the damage resulted, Degelos would still be covered because the insurance in part is designed to protect it against negligent acts of its officers and employees, even if intentional. See McBride v. Lyles, 303 So.2d 795 (La.App. 3d Cir. 1974), and cases cited therein.
For the reasons assigned, our original decree is amended to additionally grant Degelos Brothers Grain Corporation judgment against American Manufacturers Mutual Insurance Company for the full amount both were held to be solidarily liable to Home Insurance Company. As amended, our original decree is reinstated.
Original decree amended and as such, reinstated.
NOTES
[1] Plaintiff initially cited Lumbermen's Mutual Casualty Company as Degelos' insurer and later amended its pleadings to substitute American as a party defendant.
[2] Drexel was paid $15,455.40, the value of the merchandise lost after the $100 deductible was applied. American realized approximately $6,000 in salvage on the damaged material and the litigants stipulated plaintiff was entitled to $9,464.36 if judgment was rendered in its favor.
[3] Osteen v. Purdue, 275 So.2d 502 (La.App. 2d Cir.1973).
[4] Spriggins v. Broadmoor Esso Service Center, 263 So.2d 365 (La.App. 4th Cir. 1972); C.C.P. art. 1005.
[5] Degelos testified: "* * * [W]e could wait as far as our initiation of the water onto the grain, because it really wasn't that big a fire, you know. Grain doesn't `fire,' it smolders. * * *" Peterman stated in effect that grain fires move very slowly and smolder without actually flaming and spreading rapidly.