416 So.2d 577 (1982)
Herbert A. RODRIGUE
v.
Carrol MATHERNE and Statco, Inc.
No. 14862.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
Rehearing Denied July 22, 1982.
*578 Michael Wanek, Robert A. Vosbein and Edward Markle, New Orleans, for plaintiff and appellee.
Robert J. Zibilich, New Orleans, H. Minor Pipes, Houma, for defendants and appellants.
Bruce M. Horack and Wilton E. Bland, New Orleans, for third-party defendant and appellee.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
LOTTINGER, Judge.
This is an action ex delicto in which Herbert A. Rodrigue sued Carrol Matherne and Statco, Inc. for damages resulting from an alleged assault and battery.[1] Defendants reconvened, claiming that the actions of Rodrigue in wrongfully cancelling certain insurance policies caused defendants large business losses.[2] After a trial on the merits, the trial court found for plaintiff on the main demand.[3] The trial court also found *579 for defendant-in-reconvention on the reconventional demand, which was dismissed with prejudice. Defendants Carrol Matherne and Statco, Inc. have appealed suspensively the adverse judgment of the trial court on the main demand.[4]

FACTS
Plaintiff, Herbert A. Rodrigue, testified at trial to the following: on April 7, 1977, plaintiff traveled from New Orleans to Houma for an appointment with Carrol Matherne, the president of Statco, Inc. Plaintiff's company acted as insurance agent to Statco, Inc. and Statco Rental Tools (also known as Mark Drilling), and also as insurance agent to Carrol Matherne personally. The purpose of the visit was to discuss insurance premiums which were due and also to discuss monthly reports which were required by the workmen's compensation insurer of Mark Drilling. These monthly reports had not been forthcoming as requested, and plaintiff wanted to reiterate to Matherne the necessity of same.
Plaintiff arrived in Houma at about nine o'clock a. m., and proceeded to the office of Matherne. Plaintiff was met by a secretary, Phoebe Buquet, who told him that Matherne was not in the office and requested that he wait. Matherne arrived some ten or fifteen minutes later. Plaintiff, Matherne, and Ms. Buquet retired to Matherne's office. Matherne sat behind his desk and plaintiff and Ms. Buquet sat in chairs in front of the desk. Conversation ensued for about one-half hour, during which Matherne insisted that he had paid all insurance premiums which were owed and that the monthly reports would not be made. Plaintiff then stated that he knew what would have to be done, meaning cancellation of the insurance policies. At this point, plaintiff reached down to gather his papers, closed his briefcase, and got up to leave. As he walked to the door of Matherne's office, he was grabbed by his right arm and spun around, and Carrol Matherne punched plaintiff on the left side of his face, knocking off plaintiff's glasses and sending him sprawling to the floor. After being punched by Matherne, plaintiff testified that he lost consciousness for a short time.
When plaintiff came to, he was sitting in a chair in an adjoining room and Carrol Matherne was choking him by the throat and cursing him. Plaintiff testified that he heard Ms. Buquet and Matherne's daughter, Remedia Matherne Moore, screaming for Matherne to stop, that Matherne was killing plaintiff. Plaintiff stated that at that moment he feared for his life, but Matherne then released him.
Plaintiff testified that he was allowed to use the lavatory to clean up, inasmuch as his cheek was bleeding where he had been struck. Remedia Matherne Moore aided plaintiff with a wet paper towel. Plaintiff then collected his belongings and left the office. He traveled by car down the street, trying to remember where the local hospital was located. Plaintiff went to the office of Damco, Inc. to elicit the help of a business client, but did not stop because the client's car was not on the premises. Plaintiff then drove to a pay phone and attempted unsuccessfully to contact his attorney in New Orleans. Finally plaintiff drove to a filling station and called another business associate, requesting assistance. Plaintiff stayed at the filling station until William Ledet, an employee of the business associate, arrived to take plaintiff to the Terrebonne Parish General Hospital for treatment. In route to the hospital, plaintiff told Ledet what had transpired. Plaintiff was met at the hospital by Louis St. Martin, the son of the plaintiff's business associate. Plaintiff also told St. Martin that he had been struck by Matherne.
Throughout all the proceedings in the trial court, the fact that plaintiff arrived at Terrebonne General with a fracture of his left cheekbone, soft tissue swelling around the left eye, and bleeding within the sinus *580 cavity was uncontested. Defendant Carrol Matherne stated at trial that he did not lose his temper during the discussion in his office, that he did not strike plaintiff, and that he did not choke plaintiff.
Phoebe Buquet testified at trial that she was gathering papers with her back turned when the alleged punch was thrown, and that she neither saw nor heard anything resembling an altercation. Ms. Buquet stated that plaintiff did exchange chairs during the course of discussion and that she observed a small bit of blood on plaintiff's left cheek, which she attributed to a scratch or pimple.
Remedia Matherne Moore testified at trial that she did not know what transpired in her father's office, and additionally denied having given plaintiff assistance in cleaning up his face.

TRIAL COURT
The trial court rendered judgment on the main demand for plaintiff, Herbert A. Rodrigue. The trial judge stated that he had been favorably impressed by the testimony of Rodrigue, who had been responsive to all questions and exhibited other indications of credibility. The trial judge further stated that the testimony of Matherne was evasive and inconsistent, and also concluded that the testimony of Phoebe Buquet and Remedia Matherne Moore was prejudiced and unduly influenced by Carrol Matherne.
The trial court held that there was no overt act or provocation by Rodrigue which might excuse the sudden violent tortious acts of defendant, and held Carrol Matherne and Statco, Inc. jointly and in solido liable to plaintiff.[5] Matherne and Statco, Inc. were cast in judgment for $2,530.89 in special damages and $50,000.00 in general damages.

SPECIFICATIONS OF ERROR
Defendants-appellants, Carrol Matherne and Statco, Inc., assign the following specifications of error:
I. The trial court erred in admitting hearsay testimony by various people as to what happened in defendant's offices.
II. The trial court erred in permitting questions to the defendant concerning past acts of violence and in then allowing extraneous evidence of those acts, when defendant neither placed his character in issue nor made any claim of self-defense.
III. The trial court erred in granting excessive damages when no permanent disability nor any severe pain was proven.

ASSIGNMENT OF ERROR 1
Defendants-appellants basically argue that the trial court erred in allowing Louis St. Martin and William Ledet to testify that the plaintiff had told them that his injuries had been caused by Carrol Matherne. Appellants contend that these out-of-court statements were inadmissible hearsay, and that the trial court committed reversible error by allowing same into evidence over counsel's objections.
The Louisiana Supreme Court has quoted Professor McCormick for the following definition of hearsay evidence:
"Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." State v. Martin, 356 So.2d 1370, 1373-1374 (La.1978); citing C. McCormick, Evidence, § 246 (Cleary ed. 1972)
The plaintiff has argued that these statements were non-hearsay, in that they were offered not to show that the truth of matters asserted therein, but rather to show the plaintiff's state of mind following the incident in Matherne's office. A statement or writing is not hearsay if it *581 is introduced solely for the purpose of proving the fact of its utterance and not the truth of the statement, but for this rule to apply, the mere fact that the statement was made by the person not under oath must itself be a relevant and important fact; however, if the fact that the statement was made would be of no importance except for the truth of the statement, it is not admissible under the hearsay rule. State v. Launey, 335 So.2d 435 (La.1976). The fact that plaintiff made such statements has no independent relevance to any element of plaintiff's claim, and the only importance of such statements to the claim is the truth of the assertions. For this reason, the statements made to Ledet and St. Martin were hearsay.
Plaintiff alternatively asserts that these statements are exceptions to the hearsay rule as part of the res gestae. However, we do not find this to be the case, inasmuch as the statements were in no way contemporaneous in place and time to the tortious conduct complained of. The fact that plaintiff attempted to contact his attorney in New Orleans prior to making these statements shows that the plaintiff was not precluded from cool deliberation when the statements were made. Thus, neither the res gestae exception nor the "excited utterance" exception to the hearsay rule applies to these statements. See State v. Henderson, 362 So.2d 1358 (La. 1978); State v. Millet, 356 So.2d 1380 (La. 1978).
Nonetheless, the fact that hearsay evidence was admitted does not necessarily constitute reversible error, especially in a civil proceeding where the exclusionary rules of evidence most often go to the weight rather than the admissibility of the evidence.[6] Of particular importance is the fact that the declarant, Herbert Rodrigue, was present in the courtroom and took the witness stand immediately after Ledet and St. Martin. Thus, one of the principal criticisms of hearsay testimony, that the declarant is unavailable for cross-examination, was not present in the case sub judice. This fact alone does not place the statements made by plaintiff outside the reach of the hearsay rule, but as the Supreme Court stated in State v. Martin, supra, "Often an erroneous ruling admitting an unsworn out-of-court assertion by a testifying witness will not present grounds for reversal [.]" 356 So.2d 1370, 1374 (La.1978). The testimony of Ledet and St. Martin regarding extrajudicial statements made by plaintiff was brief and insignificant, and we hold that whatever error was made was wholly harmless.

ASSIGNMENT OF ERROR 2
Defendants-appellants argue that the trial court erred in allowing testimony concerning alleged past crimes and acts of violence by Carrol Matherne.
At trial, the plaintiff's counsel asked Carrol Matherne if he had ever been arrested for arson. Carrol Matherne was later asked if he had been arrested for battery or for disturbing the peace. Under La.R.S. 15:495, evidence of a conviction of a crime is admissible to impeach the credibility of a witness; however, before adducing impeaching evidence from another source, the witness must first be questioned on cross-examination as to such conviction, and must fail to admit same. La.R.S. 15:495 further states that evidence of arrest, indictment, or prosecution is not admissible, and that no witness can be questioned as to indictments or arrests, but only as to convictions. All questions posed by plaintiff's counsel to Carrol Matherne on cross-examination were couched in terms of arrests and not convictions, therefore this evidence was not admissible under La.R.S. 15:495.
Plaintiff alleges that the evidence of the prior arrests (and subsequent convictions in some matters) are admissible for impeachment purposes since Matherne denied *582 in a pretrial deposition that he had ever been arrested or convicted. Thus, plaintiff argues, this denial opened the door for the introduction of evidence to show that Matherne had told an untruth in his deposition. We note, however, that Matherne's deposition was not introduced into evidence. Matherne was questioned at trial as to arrests, but such questions are clearly improper under the letter of La.R.S. 15:495. Even had Matherne's denial of prior arrests been properly adduced into evidence, impeachment would have been accomplished by the mere introduction of Matherne's arrest sheet (which was actually received into evidence.) Extrinsic evidence, consisting of testimony of police officers who had arrested Matherne in the past and testimony of persons who had in the past preferred criminal charges against Matherne, went far beyond the scope of possible impeachment, involving details of prior altercations and arrests. We see no value of this testimony in impeaching Matherne; more importantly, the deposition which contained an alleged untruth was not part of the evidence.
Plaintiff alternatively argues that testimony of the arresting officers and those previously assaulted by Matherne was admissible to rebut trial testimony by Matherne that he had only been in two fights since his boyhood. Again, assuming this to be a valid contention, only evidence proving that Matherne had been in more than two fights since boyhood would be admissible. This fact alone if introduced would impeach the witness, and recital of details and circumstances of alleged prior pugilistic endeavors again went far beyond the scope of impeachment.
Plaintiff cites Terito v. McAndrew, 246 So.2d 235 (La.App. 1st Cir. 1971) for the proposition that in an assault and battery suit, the trial court should allow evidence showing the defendant's predisposition toward violence. In Terito, the plaintiff sued one McAndrew and McAndrew's employer for damages resulting from an assault and battery. The plaintiff sued the employer for its vicarious liability under La.C.C. 2320 and also for its independent negligence in allowing a violent person such as McAndrew to entertain business clients in barrooms. This court stated merely that the employer could not be held liable for its independent negligence since there was no showing at trial that McAndrew was predisposed to violence. Terito, supra, does not stand for the broader proposition that evidence of a defendant's predisposition to violence is admissible in every suit for assault and battery. Furthermore, even the limited statements of this court made in Terito are not applicable in this case inasmuch as the respondeat superior liability of Statco, Inc. is not an issue on appeal, and the independent negligence of Statco, Inc. in allowing Carrol Matherne to conduct conversations with insurance agents has never been alleged.
Professor McCormick says the following about using character as circumstantial evidence of conduct and state of mind:
"... evidence of character in any form, whether reputation, opinion from observation, or specific acts, will not generally be received to prove that the person whose character is sought to be shown, engaged in certain conduct, or did so with a given intent, on a particular occasion... [t]he reason for the general rule is that ... generally it comes with too much baggage of prejudice, distraction from the issues, time-consumption and hazard of surprise." C. McCormick, Law of Evidence, § 155 (West ed. 1954)
Professor McCormick states that an exception may be made to the general rule, especially in civil cases for assault and battery, but only if and when the defendant pleads self-defense or offers evidence of his good character. C. McCormick, supra, at § 159. Carrol Matherne did not plead self-defense or otherwise make his character an issue at trial; thus, the cumulative testimony of the arresting officers and prior combatants should have been excluded by the trial court, and the trial court erred in admitting same.
Nonetheless, we are not of the opinion that this error mandates a reversal. It is *583 clear from a reading of the trial court's written reasons for judgment that the trial court was not unduly impressed with character evidence erroneously introduced. Although such evidence is mentioned by reference to plaintiff's post-trial memorandum, the unmistakeable inference arising from the reasons for judgment is that the trial judge simply believed the testimony of the plaintiff and did not believe the testimony of the defense witnesses, including that of Carrol Matherne. It is axiomatic that the finder of fact has the discretion and responsibility to evaluate the credibility of witnesses. After an exhaustive and thorough examination of the record, we cannot say that evaluations of credibility made by the trial court and the findings of fact based thereupon were manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). We hold that whatever error was made in allowing evidence of Matherne's bad character or past wrongdoings to be introduced was non-prejudicial, and that same does not compel reversal of the trial court.

ASSIGNMENT OF ERROR 3
Defendants-appellants argue that the trial court's award of $50,000.00 in general damages is excessive and should be reduced.
The Louisiana Supreme Court has stated that an appellate court should modify an award for damages only upon a showing that the finder of fact abused its discretion. Even upon such a showing, the award should be modified, "... only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court." Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). Accord: Reck v. Stevens, 373 So.2d 498 (La.1979). This court in Hanzy v. Sam, 385 So.2d 355 (La.App. 1st Cir. 1980), writ refused 386 So.2d 357 (La.1980), stated:
"Our purpose and our constitutional role is to guarantee by appellate review that the trial judge or jury in fulfilling its role has not so excessively abused its much discretion that our consciences would be shocked if such an award were allowed to remain untouched." 385 So.2d 355, 358.
It is not the function of the appellate courts to standardize damage awards across the state in cases with similar facts. There is no manual that one can look to for the answer as to what is shocking enough to constitute an abuse of discretion. Hanzy v. Sam, supra.
As was stated in Squyres v. Phillips, 285 So.2d 337, 339 (La.App. 3rd Cir. 1973): "A general review of the jurisprudence indicates that our courts balance many factors in assessing damages in assault and battery cases. These include, besides physical pain and suffering, the factors of provocation, reasonableness of force used, attendant humiliating circumstances, sex of victim, mental distress, etc. There is no rule or standard of law fixing or establishing the amount of recovery and each case consequently must rest on its own set of facts."
Herbert A. Rodrigue sustained a fracture of the zygomatic compound, a series of bones in the cheek area. He suffered contusions on the left cheek and eye, with concommitant soft tissue swelling around the left eye. After seeking initial treatment at Terrebonne General, plaintiff asked to be transferred to a New Orleans hospital nearer his home. Dr. Phillip Cenac testified that plaintiff suffered a moderate amount of pain while at Terrebonne General as a result of the injuries he received. Dr. Cenac did not administer painkilling drugs to Rodrigue because he wanted plaintiff to be alert when plaintiff arrived at the hospital in New Orleans. The punching incident occurred at about 10:00 a. m., and plaintiff did not receive pain medication at Hotel Dieu Hospital in New Orleans until 7 p. m. Thus, the plaintiff suffered pain from his fractured cheek bones without relief for nine hours on the day he was injured.
Plaintiff stayed at the Hotel Dieu Hospital for some 6 days, from April 7 through April 13, 1977. Four days passed before the swelling around the injury subsided enough that the situation could be properly assessed. The plaintiff underwent surgery on *584 his face on April 11, 1977. The operation consisted of inserting instruments to push the fractured bones back into place, and insertion of a screw-type surgical pin to hold the bones in place. Plaintiff suffered a good deal of pain in the hospital both before and after the surgery, and also had bleeding within his sinus cavities.
After being released from the hospital, plaintiff did not return to work for two weeks. He suffered double vision in the left eye as a result of soft tissue swelling. This double vision lasted about one month. Plaintiff stated that he had trouble sleeping because of the protrusion of the surgical pin from his face. He felt numbness in his cheek, upper lip, and lower eyelid, which physicians attributed to nerve damage near the traumatized area. This numbness lasted five or six months. Due to bleeding into sinus cavities, plaintiff was unable to bend or stoop for some two months. He also suffered dizziness and headaches which lasted for an indeterminate time. Plaintiff wore the surgical pin in his check for slightly more than one month, and testified that its removal was done without anesthetic and was quite painful.
Plaintiff was restricted in his eating habits after the injury due to difficulty in opening wide his mouth. He was unable to eat at all for 3 days after the injury, and had to restrict his diet to pureed meat and vegetables for six weeks. When plaintiff returned to work, he appeared to be timid in seeking out new business; however, there was no testimony in this regard as to the quantity of new or old business which may have been lost because of plaintiff's timidity.
The injuries suffered by plaintiff did not leave a physical scar. The plaintiff claims some damage to his psyche in that he suffers troublesome recurring memories of being punched, but apparently has not sought psychiatric help. Plaintiff's eyesight returned to normal within two months of the battery, and the medical testimony leaves little doubt that the chance of any residual disability as a result of these injuries is very small.
The trial court found, and we agree, that the attack by Matherne was totally unprovoked. Additionally, the amount of force used by Matherne was wholly unreasonable under the circumstances, especially since Rodrigue was walking away when struck by Matherne. The battery was committed in private before only one witness, so public humiliation is not a factor. However, being attacked suddenly while on the job no doubt caused great mental distress to Rodrigue, as well as shock and surprise. Additionally, Rodrigue testified that he was put in fear of his life by Matherne's choking him. This is a factor which cannot be ignored.
In light of all the attendant circumstances and factors discussed above, we are of the opinion that a general damage award of $50,000.00, although generous, is not shocking to the judicial conscience.

DECREE
Therefore, for the above and foregoing reasons, judgment of the trial court in favor of Herbert A. Rodrigue and against defendants, Carrol Matherne and Statco, Inc., jointly in solido, in the amount of $52,530.89 is hereby affirmed. All costs of this appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] Also made defendants by supplemental and amending petition were Statco Rental Tools, Interstate Fire and Casualty Company, and Market Insurance Company. Market Insurance Company was dismissed from plaintiff's suit by motion for summary judgment. (See also Note 2, infra.) Interstate Fire and Casualty Company was dismissed from the suit without prejudice on the motion of plaintiff.
[2] Defendants also third-partied Hartford Insurance Company and Market Insurance Company, alleging various liability insurance coverages. Both insurers were dismissed from the third-party demand by motions for summary judgment, on the grounds that their respective policies excluded coverage for the intentional acts of Carrol Matherne.
[3] Statco Rental Tools was not cast in this judgment, apparently on the basis of trial testimony that Carrol Matherne was not an officer or employee of Statco Rental Tools at the time of the incident in question.
[4] Dismissal of the reconventional demand has not been made an issue before this court.
[5] The trial court apparently accepted plaintiff's argument that the intentional acts of Matherne were so related to the concerns of Statco, Inc., so as to bring Matherne's conduct within the scope of his employment. See La.C.C. Art. 2320; Miller v. Keating, 349 So.2d 265 (La. 1977); LeBrane v. Lewis, 292 So.2d 216 (La. 1974).
[6] See G. Pugh, Louisiana Evidence Law, pp. 1-14 (Bobbs-Merrill 1974), wherein it is suggested that in civil non-jury trials, strict rules of admissibility need not be applied, since the test of relevancy and the hearsay rule are primarily concerned with the fear that a lay jury would give undue weight to the wrong type of evidence.